**ELK HORN COAL CORPORATION,**
Appellant,

v.

**C. E. ALLEN et al., Appellees.**

Court of Appeals of Kentucky.

May 29, 1959.

**830**

J. Woodford Howard, Prestonsburg, J. Henry Francis, Jr., Charleston, W. Va., for appellant.

Joe Hobson, Prestonsburg, for appellees.

CULLEN, Commissioner.

In an injunction proceeding, the issue was whether the Elk Horn Coal Corporation, by virtue of its rights under a deed of coal and other minerals in a tract of land of some 600 acres, or C. E. Allen and Jack Stanley, as surface owners of part of the tract, owned a large slate dump piled on the Allen-Stanley surface, which dump originally had consisted of waste coal, slate, muck, bone, shale and other waste resulting from the coal mining operations, but a large portion of which, through burning as a result of fire from spontaneous combustion, had formed a substance known as "red dog." This substance has value for use in highway and railroad construction, and as a light weight aggregate in building materials, sometimes being used in the manufacture of blocks similar to cinder blocks. The circuit court adjudged that Allen and Stanley had become the owners of the dump by virtue of its abandonment by Elk Horn. The correctness of this decision is placed in issue by Elk Horn's appeal from the judgment.

Coal mining operations began on the tract in question in 1914, and continued until 1941. During this period the slate dump accumulated, and it appears that the burning which resulted in forming the "red dog" commenced around 1926. In 1941, Elk Horn ceased mining from entries on this tract, but continued through sublessees to mine the coal under the tract from entries located on adjoining tracts. There were no accumulations to the slate dump after 1941.

What evidence there is in the record as to use of material from the slate dump is addressed to the period after 1941. There is testimony that Elk Horn used some of the material from time to time for building

mine roads, and in 1946, or perhaps in 1948, permitted a railroad company to take some of the material for track ballast. Occasionally Elk Horn allowed other persons to take some. It appears that Allen and Stanley did not use or make claim to the slate dump until shortly before this lawsuit was filed by Elk Horn, in 1956.

Under the mineral deed, Elk Horn was given the right "to dump, store and leave upon said land any and all muck, bone, shale, water or other refuse from said mines * * * and any and all matters and products that may be excavated from mines * * *." The deed further gave Elk Horn an "unlimited time" within which to enjoy its rights under the deed, and recited that there should not be deemed to be any abandonment of rights or privileges by reason of a cessation in whole or in part of the exercise of the rights or privileges.

■ In order to establish an abandonment of property, there must be a showing of actual acts of relinquishment, accompanied with the intention to abandon. Stinnett v. Kinslow, 238 Ky. 812, 38 S.W. 2d 920; Sandy River Coal Co. v. Champion Bridge Co., 243 Ky. 424, 48 S.W.2d 1062. Mere lapse of time and nonuser, unaccompanied by any other evidence showing intention, have been generally held not enough to constitute an abandonment. 1 Am.Jur., Abandonment, sec. 14, p. 11.

■ We think it is clear, under the terms of the mineral deed, that had the dump consisted of materials which at all times had possessed a commonly recognized merchantable value, the mere nonuse of the materials by the mining company would not furnish grounds upon which to adjudicate an abandonment. The deed specifically gives the mining company the right to "store" materials on the land, without limitation as to time. The difficulty arises from the fact that only in recent years has the "red dog" come to have any merchantable value. Previously, it may

have been recognized to have some usefulness, but not such as to give it any appreciable salability. The situation with respect to the waste coal and other minerals in the slate dump is somewhat similar—under most favorable economic conditions they might be worth recovering, otherwise not.

Can we say that merely because the slate dump for many years was considered and treated as nothing but a waste pile, it may be considered to have been abandoned? We think not. The material composing the dump was not scattered indiscriminately over the land, but was placed in an orderly pile. When the mining company had occasion to use some of the material, it did so. We think it must be considered to be the judge of whether the material in the pile had value, and until the company performed some act of complete disclaimer, or otherwise gave evidence of an intent to relinquish all claim to the pile, it cannot be said that the company had abandoned it as being of no value.

Of some significance is the fact that the first time the surface owners made claim to the pile, the mining company promptly took steps to protect its ownership. At no time did the company do anything to lead the surface owners or anyone else to believe that the materials in the pile were available for taking by anyone who wished.

 There is no presumption in law of abandonment or of intention to abandon. The burden is upon him who sets up abandonment to prove the same by clear, unequivocal and decisive evidence. 1 Am.Jur., Abandonment, sec. 17, p. 12. We think the proof here failed to meet the burden, and that the trial court erred in adjudging an abandonment.

The appellees made the contention in the trial court, and reassert it here, that they are entitled to the "red dog" by virtue of a provision in the mineral deed reserving all "stone" and "the right to develop same."

They introduced the testimony of two geologists that from a geological standpoint the "red dog" is a form of "stone." However, these witnesses conceded that the material was not stone in a commercial sense when extracted from the earth.

We think the reservation of "stone" is not susceptible of any reasonable interpretation other than that it means such mineral in the class of stone as is sought for and extracted from the earth for its value as such. See Kalferer v. Grassham, 282 Ky. 430, 138 S.W.2d 940. The "red dog" did not exist in the earth as merchantable stone, and in fact did not assume the character of stone until after the burning process. The substances that eventually formed the "red dog" were not extractable from the earth separate and apart from the coal, but were removed as a necessary part of the coal mining operation. While the "red dog" may be "stone" in one sense, we think it clearly is not the kind of stone the reservation was intended to embrace.

The judgment is reversed, with directions to enter judgment in conformity with this opinion.