**MOTORS INSURANCE CORPORATION,**
**Appellant,**

v.

**Michael SINGLETON, Carol Singleton, Mattingly-Rapier Chevrolet Company, Donnie Scheffer, Owens Chevrolet, Inc., Michael H. Keys, Allen Neal, Appellees.**

**Michael SINGLETON & Carol Singleton, Cross-Appellants,**

v.

**MOTORS INSURANCE CORPORATION and Mattingly-Rapier Chevrolet Company, Cross-Appellees.**

Court of Appeals of Kentucky.

Feb. 24, 1984.

Julius Rather, Lexington, for appellant/cross-appellee Motors Ins. Corp.

W. Earl Dean, Dean, Dean & Dean, Harrodsburg, for appellee Owens Chevrolet Co.

James F. Clay, Clay & Clay, Danville, for appellee/cross-appellee Mattingly-Rapier Chevrolet Co.

Paul V. Hibberd, Danville, for appellees/cross-appellants Michael Singleton and Carol Singleton.

Before HAYES, C.J., and REYNOLDS and DUNN, JJ.

DUNN, Judge.

This case, a classical exercise demonstrating the tedium involved in the process of our judicial system's wheels grinding slowly but exceedingly fine, requires an identifying lineup of the parties in the general chronological order in which they appear in the factual scenario with which we are concerned. It is as follows:

> Allen Neal, appellee, owned a 1975 Corvette automobile insured against theft by
>
> Motors Insurance Corporation, appellant, also known as M.I.C.;
>
> James Scott, appellee, alias Michael Keys, conspiring with his friend, Neal, using his alias name Keys on fictitious, forged title papers, sold the car to
>
> Owens Chevrolet Company, appellee, and it sold the car to
>
> Donnie Scheffer, appellee, who in turn traded it in the purchase of another car, conveying it to
>
> Mattingly-Rapier Chevrolet Company, appellee and cross-appellee, and it then sold it to
>
> Michael Singleton and his wife, Carol Singleton, appellees and cross-appellants.

After selling the Corvette to Owens Chevrolet, in furtherance of a conspiracy between him and Scott, alias Keys, Neal reported to the police that it had been stolen, and fraudulently presented a claim and collected the proceeds of the theft insurance policy from M.I.C. and later transferred title to the car to M.I.C.

After all of these events, Carol Singleton, while driving the car on November 23, 1976, was arrested by Eastern Kentucky University campus police and charged with driving a stolen motor vehicle. The Corvette was seized by the police and turned over to M.I.C.

Armed with their title from Mattingly-Rapier, the Singleton's demanded of M.I.C. the return of the automobile. Their demand having been refused by M.I.C., they sued Mattingly-Rapier and M.I.C. in the Boyle Circuit Court on January 21, 1977. Despite the earlier demand on it and despite the fact it knew of the suit and its contents and demands, summons having been served on it on January 23, 1977, M.I.C., nonetheless, on March 29, 1977, sold the Corvette to L.R. Cooke Chevrolet Company for $6,500.00. M.I.C. also received

$2,000.00 criminal court ordered restitution from Neal. He and Scott, alias Keys, had pleaded guilty to theft charges in relation to their scheme. In all M.I.C. collected $8,500.00 on the $8,127.50 theft claim it had paid. It realized a profit of $372.50.

In their two count action in Boyle Circuit Court, Singletons in Count One alleged breach of title warranty on Mattingly-Rapier's failure to provide to them a clear title to the Corvette demanding damages for its loss plus consequential damages. In Count Two they alternatively alleged M.I.C. wrongfully converted the Corvette also demanding damages for its value plus additional sums for consequential damages.

Mattingly-Rapier joined as third party defendants its predecessors on the forged title to the Corvette, Donnie Scheffer, Owens Chevrolet, and, using Scott's alias name, Michael Keys, Neal's co-conspirator on the forged title. Mattingly-Rapier also answered defending on the basis of its title from Allen Neal thru Owens Chevrolet and Scheffer, and it also cross-claimed against alias Keys and Neal and M.I.C.

The trial court in the first trial sustained Singletons' motion for summary judgment on the issues of liability against Mattingly-Rapier and of their damages as a result of that liability. It also sustained M.I.C.'s motion for summary judgment in its favor dismissing Singletons' complaint, and all other cross-claims and counterclaims against it.

In its order sustaining the motions, the trial court in effect found Mattingly-Rapier liable on a breach of title warranty to the Singletons awarding them damages for the car's purchase price plus consequential damages. It dismissed M.I.C. on both the complaint and cross-claims against it, holding it had proper title to the car, and also dismissed the third party actions against Owens Chevrolet and Donnie Scheffer on the basis they had no intent to defraud or misrepresent the title. It further ordered *Neal* and alias Keys to reimburse Mattingly-Rapier, Owens Chevrolet and Scheffer all their pecuniary losses.

Mattingly-Rapier appealed the summary judgments to this court but failed to designate M.I.C. as an appellee. Singletons cross-appealed designating M.I.C. as an appellee. This court dismissed M.I.C. as a party to the cross-appeal since Mattingly-Rapier had not designated it on its direct appeal. However, this court did conclude and hold that the trial court erred in determining that Mattingly-Rapier did not have legal title to the Corvette, reasoning that alias Keys was the agent of Allen Neal, the car's legal owner, and in that capacity, even though using forged papers, passed legal title to Mattingly-Rapier thru Owens Chevrolet Company and Donnie Scheffer and thru it to the Singletons. In doing so, this court held the trial court erred in concluding the vehicle to have been stolen and that M.I.C. acquired a good title from Neal. It reversed and remanded the case to the trial court to determine Singletons' claim for conversion against M.I.C., Mattingly-Rapier's cross-claims against Owens Chevrolet and Scheffer and its cross-claim against M.I.C.

However, discretionary review was granted by our Supreme Court. It dismissed the appeal on the basis that the trial court's opinion and order was interlocutory disposing of less than all the claims and its attempt to make it final was without an articulated determination that there was no just reason for delay. It remanded it to the trial court so that theories argued on the aborted appeal or any other contentions not presented to or ruled on by the trial court might be submitted and decided by the trial court.

On remand, a special judge was appointed to preside in place of the Boyle Circuit Judge who was recused from further participation in the trial. A hearing was had without jury at which all parties were given the opportunity to present proof in addition to the facts about which they had stipulated there was no dispute. All parties were present with counsel other than Neal and Scott, alias Keys, who were not present or represented though properly notified.

As a result of the hearing before the special judge, at which some additional proof was presented, the trial court found and concluded that title to the Corvette passed to Mattingly-Rapier thru Owens Chevrolet and Scheffer from Neal through his agent Scott, alias Keys, and, with the exception of Neal and Scott, dismissed all claims against them. It held Neal and Scott liable to the Singletons for breach of warranty of title. It also determined M.I.C. wrongfully converted the vehicle, but limited damages against it to the value of the car plus 8% interest from the date of the conversion. It entered judgment jointly and severally against M.I.C., Neal and Scott, alias Keys, for $8,500.00, interest at 8% from November 22, 1976, and upon payment by M.I.C., it had judgment against Neal and Scott for the amount it paid. It also provided for a separate joint and several judgment only against Neal and Scott for $50.84 interest on a loan, $42.00 usage tax and clerk's fee, $100.00 lost wages to Michael Singleton, $609.00 insurance premium, $7,118.75 attorney fees, and $779.21 as costs on appeal.

On its direct appeal M.I.C. contends that the summary judgment granted in its favor in the first instance is final and binding, since it was not a party to the first appeal and the trial court's reinstatement of it as a defendant in the second trial was error. We disagree.

This opinion need not be burdened with the reasons for it, but a misunderstanding has developed with regard to appellate practice where a party who is not aggrieved by part of a lower court judgment fails to provisionally appeal on other portions or cross-appeal on the harmless portion. In *Brown v. Barkley*, Ky., 628 S.W.2d 616 (1982), then Chief Justice Palmore in clearing up the misunderstanding stated in pertinent part;

> .... We are moved to point out, ... that appeals are taken from judgments, not from unfavorable rulings as such a party must be aggrieved by a judgment in order to appeal from it. *Cf. Miller v. Miller*, Ky., 335 S.W.2d 884, 886 (1960); *Civil Service Comm. v. Tankersley*, Ky., 330 S.W.2d 392, 393 (1959). A cross-appeal is appropriate only when the judgment fails to give the cross-appellant all the relief he has demanded or subjects him to some degree of relief he seeks to avoid.... We recognize, of course, that a document styled as a "judgment" may embrace within its four corners opinion, observations, recitations or rulings leading to or in support of its operative effect, but in contemporary parlance it is the "bottom line" that is the ultimate judgment and source of aggrievement providing the basis for an appeal....

■ The Singletons were not aggrieved by the original judgment of the trial court. They were awarded extensive damages against Mattingly-Rapier. They are not, therefore, precluded on remand from pursuing their claim against M.I.C. In this regard we reject M.I.C.'s argument and affirm the trial court.

The Singletons' agreement on appeal that there was no error in the trial court permitting them to successfully pursue their conversion claim against M.I.C. contradicts their first contention on their cross-appeal that the trial court erred in permitting Mattingly-Rapier to show it transferred good title to the vehicle to them. If Mattingly-Rapier did not have good title to convey, it was in M.I.C. If it was in M.I.C., then Singletons can have no recovery against M.I.C. Surely they can't seriously expect a finding that neither had title so they can recover from both.

■ They argue that their motion for a summary judgment against Mattingly-Rapier in the original trial should have been sustained since Mattingly-Rapier at that time, arguing it had passed good title, presented no proof to support its general denial of the car having been stolen. They maintain the status of Mattingly-Rapier's theory of the case and supporting proof was in effect frozen at that point and the trial court should have not considered any other. This argument, resembles an echo of M.I.C.'s contention that once dismissed in the original action, its status was in effect frozen.

We rejected that notion as to M.I.C. as we do this in affirming the trial court with regard to Singletons' contention. The very purpose of the case being remanded by the Supreme Court was to determine these very issues that were originally undecided.

Perhaps their seemingly contradictory point of view stems from their zeal to collect consequential damages ex contractu from Mattingly-Rapier which were denied to them ex delicto by the trial court against M.I.C. in their tort claim of conversion against it. Their other argument on cross-appeal is that the trial court erred in not awarding them both consequential damages and punitive damages against M.I.C. for their conversion claim. We agree with respect to damages incidental to expenses incurred toward the purchase, financing and unrecoverable insurance expenses of the automobile and with respect to punitive damages. We disagree, however, with respect to damages for Carol Singleton's mental anguish and humiliation, Michael Singleton's lost wages, and for their attorney fees.

■ We are aware of the rule enunciated in *Amlung v. Bankers Bond Company*, Ky., 411 S.W.2d 689 (1967), that the traditional measure of damages for the conversion of personal property is the fair market value of the property, with interest from the time of conversion.

In applying the rule, however, we must keep in mind that the progenitors of our modern "conversion" tort cause of action were the common law writs of "trover" and of "trespass." Trover was originally intended to provide for recovery of property from one who had no legal right to the property but did not initially possess it wrongfully, as in the case of a finder of property lost or misplaced by the true owner. Trespass dealt with recovery of property initially and continually held wrongfully as in the case of the holder having stolen the property from the plaintiff. In trover recovery was limited to the property itself, while in trespass consequential damages were also allowed. As the law developed

the two causes of action merged and became one, that of "conversion." During this development period, because of the infrequency of actions based on trespass, the law applicable to damages in trover actions was applied with increasing frequency in all cases, resulting in the concept of conversion damages being limited to recovery of the property itself or its value.

■ This concept, however, ignores the stark reality that an aggrieved party suffers other loss. Under the original trespass concept all consequential damages could be recovered. We are of the opinion that in view of both concepts that the value of the property should include not just the property itself, but all other sums spent by the aggrieved party that were incidental and necessary to the purchase and anticipated use of the property. This is particularly true when some element of intentional and deliberate conversion is present as in the old trespass writ.

■ We find this not inconsistent with the rule in *Amlung* which seemingly stands for the fair market value recovery concept, but contains no language of limitation. It certainly is consistent with the holding in *Riggs Motor Co., Inc. v. Archer*, Ky., 240 S.W.2d 75 (1951), allowing recovery of finance charge, usage tax and sums spent for repairs in a case depriving the rightful owner of his automobile, albeit ex contractu and statutory. The fact that our Uniform Commercial Code does not provide consequential damages for conversion, as it does for contract breaches in KRS 355.2–714(3), is of no consequence since a conversion as we have here is not a commercial transaction and could hardly be provided for in a commercial code, uniform or otherwise. It sufficeth to say it is at least not forbidden by the code.

■ We are not inclined, however, to extend recovery to damages for Carol Singleton's anxiety and humiliation caused by her arrest or to Michael Singleton's loss of wages or to their attorney fees. The arrest occurred prior to M.I.C.'s conversion of the car which could, therefore, not have

been a causative substantial factor in the arrest and the resultant anxiety and humiliation. Wages lost as a result of the litigation over the conversion are not recoverable as are wages lost in pursuit of the property converted. The same applies to their attorney fees incurred as a result of the conversion litigation as compared to attorney fees incurred in recovering possession of the property. The former are not compensable, the latter are. *See* 18 Am.Jur.2d *Conversion* §§ 95 and 98 (1965).

We, therefore, on the cross-appeal reverse the trial court with regard to its denial of Singletons' damages of $50.84 loan interest, $42.00 usage tax and clerk's fees, and $609.00 insurance premium; and we affirm its granting judgment against M.I.C. for $8,500.00 with interest at 8% from November 22, 1976, until paid, and their taxable court costs.

There remains the issue on their cross-appeal of the Singletons' punitive damages against M.I.C. denied by the trial court. In a conversion action, if the injury complained of is the result of the defendant's gross negligence or his recklessness, punitive damages are recoverable. *Hensley v. Paul Miller Ford, Inc.*, Ky., 508 S.W.2d 759 (1974). That court in reversing the trial court's refusal to allow punitive damages in an automobile conversion case favorably quoted W. Prosser, *Torts* § 2 (4th ed.1971).

> Where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award in the tort action "punitive" or "exemplary" damages, or what is sometimes called "smart money." Such damages are given to the plaintiff over and above the full compensation for his injuries, for the purpose of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example.

Here M.I.C., on notice as to the circumstances of the Singletons' purchase of the Corvette, and on notice that they had been deprived of its possession, that they had demanded its return and were refused, that they had sued both it and Mattingly-Rapier and were thereby attempting to recover it or its value, nevertheless deliberately and intentionally completed the conversion by selling it and reaping a profit. These facts certainly meet the test for punitive damages set forth in Prosser and in *Hensley v. Paul Miller Ford, Inc., supra.* We agree with the Singletons that such flagrant action by M.I.C. deserves the sting of punitive damages, the amount to be measured in an amount set by the court on the basis of the seriousness of the conversion measured by the harm done. In this regard we reverse the trial court and remand this case to it for a determination of the amount of punitive damages against M.I.C. consistent with this opinion.

In summary, on the direct appeal, we affirm the trial court in awarding judgment in favor of Michael and Carol Singleton, appellees, against appellant, Motors Insurance Corporation, for $8,500.00 with interest at 8% per annum from November 22, 1976, until paid, and for taxable costs, and in dismissing all claims against appellees, Mattingly-Rapier Chevrolet Company, Owens Chevrolet, Inc., and Donnie Scheffer. On the cross-appeal, we reverse the trial court on its denial to cross-appellants, Michael and Carol Singleton, damages against Motors Insurance Corporation for $50.84 loan interest, $42.00 usage tax and clerk's fee, and $609.00 insurance premium. Also on the cross-appeal we reverse the trial court and remand this case to it for its determination of the amount of punitive damages to be awarded the cross-appellants, Singletons, against Motors Insurance Corporation.

All concur.