James E. FOLEY d/b/a Cumberland Auto Sales, Appellant,

v.

PRODUCTION CREDIT ASSOCIATION OF the FOURTH DISTRICT, successors in interest to the Nolin PCA, and Kenneth Morris, Appellees.

No. 87–CA–000277–MR.

Court of Appeals of Kentucky.

July 15, 1988.

Stuart N. Pearlman, Louisville, for appellant.

Dwight Preston, Lewis, Bland, Preston & Birdwhistell, Louisville, for appellees.

Before CLAYTON, REYNOLDS, and WILHOIT, JJ.

CLAYTON, Judge.

James E. Foley, the appellant, filed an action against the Production Credit Association (referred to as Nolin PCA) and one of its officers, both of whom are appellees. A claim for punitive damages was disposed of by summary judgment prior to trial. The claim against the PCA officer was disposed of by directed verdict in favor of the officer. The jury returned a verdict in favor of Nolin PCA. We affirm the judgment and rulings of the Hardin Circuit Court in all respects.

Foley traded his 1977 Ford pick-up truck to a man named Karl Rudolph in exchange for a Bobcat front-end loader. Rudolph then pledged the pick-up truck and some cattle to Nolin PCA as security for a $3,500 loan. Subsequent to the loan, Rudolph was arrested for giving a cold check for the cattle. The cattle were then repossessed by the previous owner. Nolin PCA then moved against the pick-up truck which was the only remaining security for its loan. The pick-up truck was then sold to a bona fide purchaser in partial satisfaction of the loan balance. After the occurrence of all of these events, Foley learned that the Bobcat front-end loader that he had received in trade from Rudolph was stolen property. It was returned to its original owner.

Foley filed suit against the Nolin PCA and one of its officers seeking to recover the value of his lost truck, as well as consequential damages, interest and punitives.

At the heart of Foley's entire claim is the allegation that Nolin PCA should have known that the vehicle was stolen property. This allegation is made on the basis of two facts. First, Nolin PCA learned before repossession of the truck that Rudolph was charged with giving a cold check to somebody else for his cattle. Second, it is argued that Nolin PCA knew or should have known after repossession of the vehicle that the truck title was actually held by a bogus corporation. This corporation, Metal Concepts, Inc., was supposedly owned entirely by Rudolph, though in truth and reality it had never been incorporated at all. (Foley had transferred title for Rudolph to the corporation). Because of these two factors, it is argued that Nolin PCA should have made further inquiry into the ownership of the vehicle before it was resold.

The controversy before this Court is resolved by which law controls, i.e., the Com-

mon Law of Kentucky in regard to conversion, the Uniform Commercial Code in Article 2 relating to sales, or the Uniform Commercial Code as embodied in Article 9, secured transactions. Foley contends that the law of conversion is controlling as embodied in *Kimberly & European Diamonds, Inc. v. Burbank*, 518 F.Supp. 599 (W.D.Ky.1981), affirmed 684 F.2d 363 (6th Cir.1982), and *Motors Ins. Corp. v. Singleton*, Ky. App., 677 S.W.2d 309 (1984). The trial court found the Uniform Commercial Code to be applicable and instructed the jury along those lines. We agree with the trial court.

The underlying purpose of the Uniform Commercial Code is to simplify, clarify, and modernize the law governing commercial transactions. KRS 355.1–102(2)(a). Our Legislature has specifically provided that the statute is to be liberally construed in order to promote its underlying purposes and policies. KRS 355.1–102(1).

■ A part of the overall scheme of the Uniform Commercial Code is the concept of "voidable title." KRS 355.2–403. That section and its subparts provide that a person with voidable title has power to transfer a good title to a good faith purchaser for value. Further, when goods have been delivered under a transaction of purchase, the purchaser has such power even though the delivery was procured through fraud punishable as larcenous under the criminal law. KRS 355.2–403(1)(d). It is specifically provided that the rights of other purchasers of goods and of lien creditors are governed by the Articles on secured transactions (Article 9), . . . and documents of title (Article 7). KRS 355.2–403(4).

Kentucky case law has upheld the validity of the statutory section dealing with voidable title and ruled specifically that good title may be transferred under the circumstances provided for in the statute. *United Road Machinery v. Jasper*, Ky. App., 568 S.W.2d 242 (1978). In that case, the court found that the transaction met the statutory criteria, that there was noth-

ing to suggest that the seller of the goods was not the actual owner of those goods, and that the subsequent purchaser had conducted a search of county records which revealed no encumbrances and that the subsequent purchaser had no knowledge of nor reason to suspect that the seller was not the true owner. Under these circumstances, the subsequent purchaser was found to be a bona fide purchaser. *United Road Machinery v. Jasper, supra* at 245.

■ In this circumstance, Foley cloaked Rudolph with indicia of ownership. Had Rudolph sold the vehicle to a subsequent purchaser, that bona fide purchaser would clearly own the vehicle.

In fact, one of the hypotheticals in Leibson's and Nowka's book, *The Uniform Commercial Code of Kentucky*, covers this situation exactly.

Nowka convinces Leibson that he is the Nowka of Nowka Watch Collectors, Inc., an organization that owns a watch and clock museum. Leibson sells his watch to Nowka for $1000 and in return takes a $1000 check drawn on the account of Nowka Watch Collectors, Inc. Nowka has no relationship to Nowka Watch Collectors; the check is a forgery and is not honored by the drawee bank. Leibson attempts to get the watch back from Nowka, who has sold it to Fritschner, a good faith purchaser for value. Leibson institutes a replevin action against Fritschner. Held: Fritschner wins. Leibson has vested Nowka with voidable title under Section 2–403(1)(a), (b), (c), and probably (d) depending upon the criminal law of the jurisdiction. Only one of the required ways must be satisfied in order for Nowka to have voidable title. Nowka thus had the power to convey to Fritschner good title vis-a-vis Leibson, the true owner.

Leibson & Nowka, *The Uniform Commercial Code of Kentucky*, The Michie Co., Charlottesville, Va., (1983), Section 2.8(B), p. 240.

■ Even pre-code Kentucky law supports this result. In *Dudley v. Lovins*, 310

Ky. 491, 220 S.W.2d 978 (1949), a party in the same situation as Foley lost in his court action because that party actually intended to transfer title to a person acting fraudently. The entire concept of voidable title is logical and appropriate in that if a seller cloaks a buyer with indications of ownership, then anyone who subsequently purchases from that buyer has a right to rely on those indications, even if the original seller eventually proves to have been the victim of some fraud.

■ But Rudolph did not sell the truck. Instead, he exercised a different kind of dominion over the vehicle. He pledged it as collateral on a loan, something that an owner of a vehicle may do. Foley had cloaked Rudolph with ownership. Whether Rudolph tried to sell the truck or borrow money against it, it has the same effect. In fact, KRS 355.1–201(32) defines "purchase" as including "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property." Subsection (33) of that same statute defines "purchaser" as a "person who takes by purchase."

■ The facts beyond those mentioned above are sketchy. (The appellant only had transcribed bench conferences, and no actual evidentiary material). However, it appears that Nolin PCA proceeded to sell the truck pursuant to the terms of Article 9 of the Uniform Commercial Code. There is no challenge that the sale did not follow correctly those statutory terms. Apparently Foley was not given notice of the sale, but also apparently, Foley traded Rudolph even (the truck for the Bobcat) and thus Foley did not retain a security interest in the truck. Even if Nolin PCA had looked beyond Rudolph's ownership to determine who was the prior owner of the truck (which it is not required to do), the person contacted would have been Foley. It is assumed that since at the time of Nolin PCA's sale to a subsequent buyer Foley did not know that the front-end loader was

stolen, then he would have verified Rudolph's ownership. The principles of "voidable title" operate to protect Nolin PCA. The result here is the same result as in the example cited above, i.e., Fritschner wins the watch. Leibson & Nowka, *The Uniform Commercial Code of Kentucky, supra* at p. 240.

■ Foley contends that Nolin PCA committed its conversion, not at the time of repossession, but rather at the time of resale since it failed to verify Rudolph's right to pledge the truck for his individual debt since the truck was held in the name of a corporate entity. The transcript does not reveal this to be a problem. First of all, this Court depends upon the record placed before it and without the appropriate testimony transcribed before us, this Court must assume that the record supports the trial court's instructions and the jury's findings. *Burberry v. Bridges*, Ky., 427 S.W.2d 583 (1968). This record is extremely limited and of little assistance. Secondly, it is complained that since the Nolin PCA did not have a corporate resolution allowing the pledge of the vehicle for an individual debt, then the pledge is invalid. However, there is nothing in the record to indicate that Foley had a corporate resolution in his possession verifying Rudolph's right or authority to dispose of the front-end loader.

The appellant's attempt to apply *Motor's Ins. Corp. v. Singleton, supra,* is incorrect. In that case, the parties selling the vehicle did so in spite of notice of a claim of ownership by a third party. At the time that this vehicle was sold there was no such claim nor any indication that Rudolph was not the owner of the truck.

As stated in *Dudley v. Lovins, supra:*
It is unfortunate that appellees (in this case Foley) were defrauded. It is inequitable to require a blameless third party to pay for their mistake. Both parties being innocent, the loss must be borne by the party whose initial conduct puts it in the power of another to cause the loss.

It is an old and established familiar rule in Kentucky that where one of two innocent parties must sustain a loss, it must fall on the one who put it in the power of the third party to cause the loss.

This result is affirmed in *Broom's Adm'r. v. National Auto Sales,* Ky., 246 S.W.2d 1008 (1952).

The judgment of the Hardin Circuit Court is affirmed.

All concur.