Dianna MEADE, Appellant,

v.

RICHARDSON FUEL, INC., Appellee.

No. 2004–CA–000531–MR.

Court of Appeals of Kentucky.

June 10, 2005.

James Bates, Hindman, KY, for appellant.

Clifford B. Lata, Prestonsburg, KY, for appellee.

Before HENRY and VANMETER, Judges; MILLER, Senior Judge.[1]

## OPINION

VANMETER, Judge.

Dianna Meade, as seller, entered an oral agreement for the sale of mining equipment and supplies. After her buyer defaulted, she brought a conversion action against the owner of the mine at which the equipment and supplies had been used and/or consumed. We must decide whether the absence of a written agreement prevents Meade from maintaining a conversion action against the mine owner, who retained possession of some of the items under a contractual provision with the buyer. As we hold that it does, we affirm the judgment of the Floyd Circuit Court dismissing the action.

Meade's claim is that she entered into an oral agreement with Carson Thacker for the sale of mining equipment and supplies. Under her version of the transaction, Meade provided Thacker with supplies, parts, and mining equipment with the understanding that title to the items would pass to Thacker only as he paid for

them, and that any items which were not paid for would be returned to Meade. Thacker then used the items while mining premises leased from Richardson.

The agreement between Thacker and Richardson contained a clause which provided: .

> Unless otherwise agreed to by the parties hereto (i) [Thacker], covenants and agrees to remove all personal property, excepting those items which belong to RICHARDSON via the provisions hereof or otherwise, from the Contracted Premises within thirty (30) calendar days from the termination of this Agreement and (ii) all [Thacker's] personal property remaining on the Contracted Premises after thirty (30) calendar days from the termination of this Agreement shall forthwith become the property of RICHARDSON and the title, ownership, and the right of possession thereof shall become vested in RICHARDSON without the necessity of a Bill of Sale for the same.

When Thacker's operation subsequently failed, he left the disputed items on the site and did not make a demand for them until some sixty days later. Meade, Thacker, and other allegedly interested parties made competing claims for the items. Richardson did not release the items, contending that "no one had established a valid claim of ownership."

Meade's and Thacker's complaint in the Floyd Circuit Court against Richardson and other co-defendants alleged that "[t]he defendant[s] wrongfully and willfully deprived the Plaintiffs of their equipment and supplies by refusing to give them to the Plaintiffs on demand." The trial court referred the matter to the Floyd Circuit

---

1. Senior Status John D. Miller Sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

Court Master Commissioner. Following a hearing, the master commissioner dismissed the other defendants and made recommended findings, conclusions, and a judgment dismissing the complaint. The circuit court adopted the master commissioner's recommendations and denied Meade's motion to set aside the judgment. This appeal followed.

■ Meade first contends that the trial court erred by applying the statute of frauds, KRS 355.2–201, to her claim. A thorough reading of the trial court's conclusions of law, however, discloses that the trial court correctly concluded that the transaction between Meade and Thacker was actually a security agreement, whereby Meade attempted to claim a security interest in the goods and to enforce that interest against Richardson.[2] Under KRS 355.9–203,

(1) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment. (2) Except as otherwise provided in subsections (3) to (9) of this section, a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

(a) Value has been given;

(b) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(c) One (1) of the following conditions is met:

1. The debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;

2. The collateral is not a certificated security and is in the possession of the secured party under KRS 355.9–313 pursuant to the debtor's security agreement;

3. The collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under KRS 355.8–301 pursuant to the debtor's security agreement; or

4. The collateral is deposit accounts, electronic chattel paper, investment property, or letter-of-credit rights, and the secured party has control under KRS 355.9–104, 355.9–105, 355.9–106, or 355.9–107 pursuant to the debtor's security agreement.

The requirement of authentication under KRS 355.9–203(2)(c)1 is that the debtor must sign a security agreement. KRS 355.9–102(1)(g).[3] Since the record is clear that Thacker did not authenticate a security agreement by his signature or otherwise, under the unambiguous terms of KRS 355.9–203(1) and (2), Meade's claimed security interest never attached to the collateral, and it was not enforceable against Thacker, or any third party such as Richardson. In essence, Meade was an unsecured creditor of Thacker.

■ Meade, who admits that Thacker and she had no written contract, asserts that her claim against Richardson is one of

---

2. *See* KRS 355.1–201(37) (" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation.")

3. KRS 355.9–102(1)(g) allows for both written and electronic security agreements, and "authenticate" permits more than a signature as

the means of accepting an agreement. *See* David J. Leibson, Richard H. Nowka, *The Uniform Commercial Code of Kentucky* § 9.03[a] (3d ed.2004). However, Meade makes no claim that any electronic authentication occurred.

conversion rather than breach of contract. Meade asserts that Thacker and she "were free to live by their agreement and would probably have done so had [Richardson] refrained from interfering and confiscating the property and converting it to their [sic] own use." The Kentucky Supreme Court recently noted the elements necessary to establish the tort of conversion:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.[4]

With respect to these elements, at a minimum Meade did not retain legal title to the allegedly converted property, and she had neither possession of the property nor the right to possess it at the time of the alleged conversion.

Meade's attempted reservation of title, pending payment, was at best the attempted reservation of a security interest. KRS 355.2–401(1) provides that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." In the instant case, Meade was obliged to comply with the requirements of Article 9[5] in order to protect her interests.[6] As previously noted, since she failed to do so, she has no rights to the collateral. Thacker, therefore, was free to enter a contractual provision permitting Richardson to retain the equipment and supplies if Thacker failed to remove them within thirty days of defaulting and abandoning the mine site.

Meade next contends that the trial court erred by characterizing Richardson as a good faith purchaser[7] of the mining equipment. A good faith purchaser is "one who takes by purchase getting sufficient consideration to support a simple contract, and who is honest in the transaction of the purchase."[8]

The evidence supported the court's findings that Richardson gave value for at least a portion of the goods. Because Meade did nothing to protect her security interest in the equipment, she cloaked Thacker with the appearance of ownership. Although Meade claims that Richardson knew that the property did not belong to Thacker, she provides no reference to evidence on the record to support her statement. Absent any encumbrances on the equipment or evidence of bad faith, Richardson became a good faith purchaser

4. *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon,* 157 S.W.3d 626, 632 n. 12 (Ky.2005) (quoting 90 C.J.S. *Trover and Conversion* § 4 (2004)).

5. KRS 355.9–101, *et seq.*

6. David J. Leibson, Richard H. Nowka, *The Uniform Commercial Code of Kentucky* § 2.08[1] (3d ed.2004).

7. While the trial court characterized Richardson as a "bona fide purchaser," KRS 355.2–403(1) uses the term "good faith purchaser." In fact, the term "bona fide" means good faith, and the terms are interchangeable. Bryan A. Garner, *A Dictionary of Modern Legal Usage,* p. 113 (2d ed.1995).

8. *United Road Mach. Co. v. Jasper,* 568 S.W.2d 242, 244 (Ky.App.1978).

when it gave value for the equipment.[9] Thus, the trial court did not err by finding that Richardson was a good faith purchaser for value.

■   Meade finally contends that the circuit court erred or abused its discretion by adopting unsupported findings of fact and by overruling her objections to the master commissioner's report. Under CR 52.01, "[f]indings of fact shall not be set aside unless clearly erroneous.... The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court." [10]

The record indicates that Meade admits the mining equipment was sold "on time" and was delivered to Thacker. She further admits that no written contract memorialized the agreement, and that no security interests were effectively created in her favor. In light of such admissions, which support the commissioner's findings, the court did not err by adopting the commissioner's findings of fact as its own.

The Floyd Circuit Court's judgment is affirmed.

ALL CONCUR.

■

---

9.  KRS § 355.2–403(1).

10.  CR 52.01