BACIOMICULO, LLC, Appellant

v.

NICK BOHANON, LLC; and Nick Bohanon, Appellees

NO. 2015-CA-001654-MR

Court of Appeals of Kentucky.

RENDERED: AUGUST 26, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: J. Gregory Troutman, Louisville, Kentucky

BRIEF FOR APPELLEES: Perry Adanick, Louisville, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; ACREE AND D. LAMBERT, JUDGES.

OPINION

KRAMER, CHIEF JUDGE:

Baciomiculo, LLC, appeals an order of the Jefferson Circuit Court summarily dismissing its claim of conversion against Nick Bohanon, LLC, and Nick Bohanon (collectively "the Bohanon Defendants"). Following careful review, we reverse and remand.

Much of the history of this case was summarized by the circuit court's aforementioned order and judgment. We quote the relevant part of that history as follows:

Plaintiff, Baciomiculo, LLC ("Plaintiff"), is the owner of certain tower crane and construction hoist component parts (the "Equipment"). Beginning in March 2011, Ardis E. Greenamyer II ("Greenamyer"), as a member of Hi-Rise Equipment, LLC, permitted Plaintiff to store the Equipment at his unimproved commercial real estate, located at 12500 Avoca Road, Louisville, Kentucky (the "Avoca Property").

On or about January 4, 2011, PBI Bank, Inc. ("PBI Bank") filed a foreclosure action against Greenamyer in Jefferson Circuit Court, Case No. 11-CI-400069, with respect to the Avoca Property. According to the case file for the foreclosure action, Greenamyer was allegedly not personally served and, thus, did not defend such action. PBI Bank instead allegedly attempted to constructively serve Greenamyer by way of a warning order. Such warning order, however, allegedly incorrectly identified Greenamyer as "Ardis E. Greenamyer III."

On or about January 26, 2012, PBI Bank assigned its mortgage on the Avoca Property to Defendant, Lakeland Capital West IV, LLC ("Lakeland"), by way of an Assignment filed in Deed Book 9832, Page 310 in the Office of the Jefferson County Clerk. By Order, entered March 7, 2012, Lakeland was substituted as the foreclosing party in the PBI Bank foreclosure action. At such time, however, Lakeland had assigned the Avoca Property mortgage to Fidelity Bank of Texas by way of an Assignment filed in Deed Book 9838, Page 65 in the Office of the Jefferson County Clerk.

Lakeland allegedly obtained ownership of the Avoca Property following a judicial sale in August 2012, by virtue of a certain Commissioner's Deed, dated January 23, 2014 and recorded on February 20, 2014 at Deed Book 10206, Page 66 in the Office of the Jefferson County Clerk. Lakeland allegedly was aware of the presence of the Equipment on the Avoca Property as early as July 2013, and made no effort to ascertain the identity of the owner of the Equipment. Lakeland allegedly did not obtain either an Order of Possession or Forcible Detainer Judgment which dispossessed Greenamyer and any occupants of their possession in the Avoca Property after the entry of the January 23, 2014 Commissioner's Deed. Further, Lakeland allegedly did not notify Greenamyer or any other occupant to vacate the Avoca Property or make a demand to remove the Equipment after the entry of the January 23, 2014 Commissioner's Deed. Lakeland allegedly contracted with the Bohanon Defendants to undertake the

removal of the Equipment from the Avoca Property.[FN] By contract, dated February 24, 2014, the Bohanon Defendants were to remove all of the Equipment, pay Lakeland $10,000, and keep the proceeds of the sale of the scrapped material of the Equipment. Sometime prior to March 9, 2014, the Bohanon Defendants allegedly entered upon the Avoca Property and removed the Equipment. The Bohanon Defendants contracted with Defendant, River Metals Recycling, LLC ("River Metals"), which allegedly took possession of the Equipment, scrapped the Equipment and paid the Bohanon Defendants for the scrapped Equipment.

[FN] In the Complaint, Plaintiff alleges that Lakeland contracted with River Metals prior to March 10, 2014, with respect to the removal and disposition of the Equipment from the Avoca Property, and that River Metals contracted with the Bohanon Defendants. The contract attached to the Bohanon Defendants' Motion for Summary Judgment reflects that Lakeland contracted with the Bohanon Defendants.

On or about May 19, 2014, Plaintiff filed the Complaint in this action against Lakeland, River Metals and the Bohanon Defendants, alleging that the above actions constituted a conversion of the Equipment, and that they undertook the above actions with oppression, fraud and/or reckless disregard for Plaintiff's rights in the Equipment justifying an award of punitive damages. Lakeland, River Metals and the Bohanon Defendants each filed an Answer.

The Bohanon Defendants ma[de] a Motion for Summary Judgment, contending that there remain no genuine issues of material fact and they are entitled to judgment as a matter of law, as they are a good faith purchaser for value of the Equipment and have therefore acquired either good title or voidable title, under KRS [Kentucky Revised Statutes] 355.2-403, over the Equipment; that the Bohanon Defendants provided value in paying $10,000 plus labor to clean up the property and was certainly entitled to rely on Lakeland's assertion that it had the right to sell the parts and equipment; and that, because the Bohanon Defendants had good title, they cannot be liable to Plaintiff for any reason, and Plaintiff's remedy, if any, must be found elsewhere.

Plaintiff respond[ed] that the Bohanon Defendants did not obtain absolute title to the Equipment from Lakeland; that the Bohanon Defendants did not obtain voidable title by way of KRS 355.2-403; that there remain genuine issues of material fact with regard to whether the Bohanon Defendants were good faith purchasers; that the Bohanon Defendants obtained no legal title to the Equipment because Lakeland itself lacked any legal title; and that the Bohanon Defendants have a remedy against Lakeland for breach of warranty under KRS 355.2-312(1).

Ultimately, the circuit court granted summary judgment in favor of the Bohanon Defendants.[1] As to why, it explained:

Even viewing the facts in a light most favorable to Plaintiff and finding that Lakeview had no title in the Equipment, it appears that the Bohanon Defendants, by paying full value for the Equipment, acquired the rights of a bona fide purchaser in good faith under common law.

---

1. Baciomiculo's claims against the other defendants remain pending before the circuit court and are not at issue in this appeal.

There is nothing of an evidentiary nature in the record that reflects that Lakeview did not present itself as being the owner of the Equipment. Likewise, the record is devoid of any affirmative evidence that the Bohanon Defendants had any knowledge that Lakeview did not have good title in the Equipment. Accordingly, the record reflects that the Bohanon Defendants had good title and cannot be liable to Plaintiff as a matter of law.

Stated differently, the circuit court presumed Lakeland had no title to the personal property at issue in this matter (*i.e.,* the equipment). Nevertheless, the circuit court reasoned because Lakeland held title to the land where the equipment had been placed, and because Lakeland did not tell the Bohanon Defendants that it was not the owner of the equipment, the Bohanan Defendants were able to purchase and acquire valid title to the equipment from Lakeland and were entitled to be treated as a good faith purchaser for value.

This appeal followed.

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476 (Ky.1991). Summary judgment "is proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* at 480 (citing *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255 (Ky.1985)).

On appeal, we must consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft,* 916 S.W.2d 779 (Ky.App. 1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the circuit court's decision. *Goldsmith v. Allied Building Components, Inc.,* 833 S.W.2d 378 (Ky.1992). Likewise, we review the circuit court's interpretations of law *de novo. Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.,* 238 S.W.3d 644, 647 (Ky.2007).

■ On appeal, Baciomiculo argues the circuit court's judgment, which stands for the proposition that a seller's lack of title is irrelevant if the buyer acted in good faith, was a backward application of the law; and that the general rule, which is applicable under the circumstances of this case, is that a buyer's good faith is irrelevant if the seller lacks title. We agree.

Additionally, in their brief the Bohanon Defendants hypothesize Lakeland *might* have acquired voidable or good title to the equipment, but they stop short of offering any kind of argument supporting those propositions. To the extent that they have attempted to raise those points as alternative bases for affirming the circuit court's judgment, we reject them as unsupported by the record.

Generally speaking, the concept of purchasing in "good faith" in the context of sales transactions regarding personal property or goods is relevant when the purchaser claims the protection of the *voidable* title or entrustment provisions of the Uniform Commercial Code. Those provisions, as adopted in KRS 355.2-403, state in relevant part:

(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with *voidable* title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though

    (a) the transferor was deceived as to the identity of the purchaser, or

    (b) the delivery was in exchange for a check which is later dishonored, or

    (c) it was agreed that the transaction was to be a "cash sale," or

    (d) the delivery was procured through fraud punishable as larcenous under the criminal law.

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(Emphasis added.)

■ With the above in mind, the goods at issue in this matter (the equipment) were never "delivered" to Lakeland "under a transaction of purchase,"[2] nor has Lakeland ever contended it qualified as "a merchant who deal[t] in goods of that kind"[3] when it sold the equipment to the Bohanon Defendants. Thus, even if the Bohanon Defendants could be considered a good faith buyer of the property, neither of the safe harbors described in KRS 355.2-403 would have permitted them to receive "good title" to the equipment from Lakeland, irrespective of whether they acted in good faith.

There is also nothing of record indicating Lakeland ever acquired any species of "voidable title" to the equipment. According to its own pleadings, Lakeland's only claim to the equipment was through its commissioner's deed to the real property the equipment had been placed upon, or its alternative theory that the equipment had been "abandoned." But, Lakeland's commissioner's deed did not encompass personal property; it only encompassed the real property "together with the appurtenance thereon" and there is no evidence of record, much less any argument, to the effect that the equipment qualified as any kind of "appurtenance" (*i.e.*, fixture). Furthermore, any good faith on the part of the Bohanon Defendants in purchasing the equipment from Lakeland would have been irrelevant if Lakeland had acquired it as abandoned property[4] because, in that event, Lakeland would have had good title—no other individual aside from Lakeland would have had any claim of ownership to it. *See, e.g., Elk Horn Coal Corp. v. Allen*, 324 S.W.2d 829, 830 (Ky.1959) (explaining the original owner of abandoned property intentionally relinquished all rights to it).

■ Moreover, the dispositive assumption of the circuit court's judgment was that Lakeland had *no title* to the equipment—in which case no measure of protection is usually afforded to a good faith purchaser. This point is underscored in 67 Am.Jur.2d *Sales* § 385 (2016), in the context of its discussion of Uniform Commercial Code (U.C.C.) 2-403 (the basis of KRS 355.2-403):

Because possession by itself is not sufficient to create voidable title under the Uniform Commercial Code, voidable ti-

---

2. *See* KRS 355.2-403(1).

3. *See* KRS 355.2-403(2).

4. As noted, whether the equipment was "abandoned" is a matter that remains pending at the circuit court level.

tle must be distinguished from complete absence of title. Thus, where the owner loses or is robbed of property and the finder or thief, or anyone who has a temporary right to use it, attempts to sell or pledge it without consent, *the owner may follow and reclaim it no matter who possesses it when found.* (Internal citations and footnotes omitted; emphasis added); *see also* 67 Am.Jur.2d *Sales* §§ 386 and 387 (2016) (explaining purchaser of goods from either a thief or a non-merchant bailee, even if acting in good faith, does not vest title on the purchaser as against the owner); *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky.App.1990) (explaining good faith is immaterial to an action for conversion).[5]

■ Despite the above, the Bohanon Defendants successfully argued to the circuit court that even if Lakeland had no title, Lakeland was still capable of transferring good title to them based upon a common law principle of estoppel discussed in *United Road Machinery Co. v. Jasper*, 568 S.W.2d 242 (Ky.App.1978). On appeal, the Bohanon Defendants offer the same argument.

Before discussing the particulars of *Jasper*, we note that KRS 355.2-403 was never designed to impair any "rights acquired under the law of agency or of apparent agency or ownership or other estoppel, whether based on statutory provisions or on case law principles." *See* KRS 355.2-

403, Official Comment 1. In other words, there are instances under Kentucky law where a person with no title to property may effectively convey good title. The common law principle of estoppel discussed in *Jasper* appears to be one such instance.

However, the principle discussed in *Jasper* has no application because it was based upon a narrow set of circumstances that are not present here.

In *Jasper*, United Road Machinery Company (United), a dealer in heavy road equipment, entered into a "lease-purchase" agreement with Consolidated Coal Company (Consolidated) for a set of truck scales. The agreement provided for monthly payments over a 24-month period with an option to purchase for one dollar consideration exercisable at the termination of the lease. *Id.* at 243. Subsequently, United *allowed* Consolidated to take possession of the scales without signing any written contract or paying any consideration. *Id.* Approximately two months later, Consolidated sold the scales to a third party, Kentucky Mobile Homes (Mobile). Before this latter sale was consummated, Mobile's president searched the Laurel and Pulaski County records for any possible lien, mortgage or other encumbrance relating to the scales; found nothing; and otherwise had no knowledge of any dispute between United and Consolidated. Two days later, Mobile sold the scales to Clyde Jasper, who also conducted a search of the Laurel and Pulaski County records;

---

**5.** The elements necessary to establish the tort of conversion are as follows:
(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.
*See Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n. 12 (Ky.2005) (quoting 90 C.J.S. *Trover and Conversion* § 4 (2004)).

found nothing; and was likewise unaware of any dispute between United and Consolidated. *Id.* at 244. Thereafter, United sued Jasper in Laurel Circuit Court for the return of the scales.

The circuit court in *Jasper* ultimately dismissed United's suit. Its reasoning, as later adopted and affirmed by the Court of Appeals, was that under the circumstances Jasper was entitled to keep the scales if Consolidated had acquired all of United's title by virtue of the lease-purchase agreement. It was entitled to keep the scales if Consolidated had acquired voidable title within the ambit of KRS 355.2-403 by virtue of the lease-purchase agreement (*i.e.*, through fraud for example) because Jasper had no notice of United's claims and otherwise qualified as a good faith purchaser. And, it was entitled to keep the scales even if Consolidated had acquired "no title" from the lease-purchase agreement. *Id.* at 244–45.

As noted, in the case at bar the Jefferson Circuit Court concluded that because Lakeland found the equipment on its land, and because Lakeland did not tell the Bohanon Defendants that it was *not* the owner of the equipment, Lakeland was able to sell and transfer valid title to that property to the Bohanon Defendants. To justify its conclusion, the circuit court seized upon the following passage from *Jasper*:

> Even if Consolidated Coal Company had no title in the truck scales to convey, this court finds appellant *estopped* from asserting his proper title against the appellees as bona fide purchaser. The Common Law rule generally allowed a purchaser to obtain that title possessed by the seller and "... one who had no title could convey none." 67 Am.Jur.2d Sales s 259, at 394. Exceptions to the general rule were shaped by equity courts and under certain circumstances the true owner of the property

was *estopped* from asserting title. The doctrine of *estoppel* was applied to circumstances where the seller possessed indicia of ownership sufficient to indicate to the purchaser that he had power to convey.

> And it has been stated that no buyer was bound to assume that the seller with whom he dealt was a wrongdoer, and if the seller presented property the title to which was apparently valid and there were no circumstances disclosed which cast suspicion upon the title, the buyer might rightfully deal with him, and, paying full value of the same, acquire the rights of a purchaser in good faith. *Id.* at 395.

In the present case, there was nothing to suggest that Consolidated Coal was not the owner of the scales. J. R. Durham in fact held himself out to be such owner. Furthermore, a search of county records revealed no encumbrances upon the machinery, and appellees had no knowledge of or reason to suspect a dispute between appellant and Consolidated Coal. KRS 355.1-201(37); KRS 355.9-102(1)(a). Under these circumstances, appellees are found to be bona fide purchasers in good faith.

Bona fide purchasers are favorites of the law, and they should only be required to pay for *another's negligence or mistake* when the circumstances are so unusual as to justify a finding that they took unfair advantage of a *transaction initiated by the complaining party*.

It is unfortunate that (appellant was) *defrauded*. It is inequitable to require a blameless third party to pay for their *mistake*. Both parties being innocent, *the loss must be borne by the party whose initial conduct puts it in the power of another to cause the loss. Dudley v.*

*Lovins*, 310 Ky. 491, 220 S.W.2d 978, 980 (1949).

*Id.* at 245 (emphasis added).

What should be obvious from this passage and what we have italicized of it is that the common law rule described in *Jasper*, allowing an individual with "no title" in personal property to effectively convey valid title irrespective of KRS 355.2-403, only applied when the owner of the property in question *voluntarily*—whether by reason of free choice or fraudulent inducement—"puts it in the power of another to cause the loss" and cloaks that individual with indicia of ownership. *Id.* In *Jasper*, for example, United *allowed* Consolidated to take possession of the scales; required no payment for the scales; and made no record of any interest it may have retained in the scales, even though it was apparently the custom to record such an interest. *Id.* at 243–44.

Moreover, the *Jasper* Court only applied this common law rule in a circumstance where (1) a voluntary transaction regarding the personal property had taken place between the owner and the individual who wrongfully sold it; *and* (2) due to a gray area in the law which existed when *Jasper* was rendered in 1978, it was a relatively close call whether the transaction qualified as a sale—which would have transferred title and left United with merely a security interest—as opposed to a lease—which would not have transferred United's title at all.[6] Indeed, subsequent to being rendered *Jasper* has never been applied or even cited in any binding Kentucky case law outside of situations involving voluntary transfers from an owner of either voidable or valid title. *See, e.g., Meade v. Richardson Fuel, Inc.,* 166 S.W.3d 55 (Ky. App.2005); *Foley v. Production Credit Ass'n of Fourth Dist.,* 753 S.W.2d 876 (Ky. App.1988).

Here, the exception described in *Jasper* simply does not apply. No voluntary transaction ever took place between Baciomiculo and either Lakeland or the Bohanon Defendants. To the contrary, Lakeland instead cast itself in its pleadings as either a finder of "abandoned property," or an "in-

---

**6.** This gray area is explained in KRS 355.1-203, Official Comment 2:

One of the reasons it was decided to codify the law with respect to leases was to resolve an issue that created considerable confusion in the courts: what is a lease? The confusion existed, in part, due to the last two sentences of the definition of security interest in the 1978 Official Text of the Act, Section 1-201(37). The confusion was compounded by the rather considerable change in the federal, state and local tax laws and accounting rules as they relate to leases of goods. The answer is important because the definition of lease determines not only the rights and remedies of the parties to the lease but also those of third parties. If a transaction creates a lease and not a security interest, the lessee's interest in the goods is limited to its leasehold estate; the residual interest in the goods belongs to the lessor. This has significant implications to the lessee's creditors. "On common law theory, the lessor, since he has not parted with title, is entitled to full protection against the lessee's creditors and trustee in bankruptcy. ..." 1 G.

Gilmore, *Security Interests in Personal Property* Section 3.6, at 76 (1965). That the *Jasper* Court navigated this gray area is apparent from the context of that case and more so by its citation of KRS 355.1-207(37) (the troublesome statute discussed above) in its analysis of how common law estoppel applied under the circumstances. *Id.* at 245. The *Jasper* Court navigated this gray area by: (1) equivocally stating that it *felt* like the lease-purchase agreement between United and Consolidated qualified as a "transaction of purchase" under KRS 355.2-403, and that if this was the case Consolidated had acquired voidable title; or alternatively, (2) if its understanding of the law on that point was incorrect, then United, by its voluntary negligence or mistake in trusting Consolidated and clothing it with indicia of ownership, was still culpable enough for purposes of estoppel. *Id.*

nocent bailee" due to its foreclosure upon the land where the property was located. Conspicuously absent from the circuit court's opinion and judgment, quoted earlier in this opinion, is also any discussion of Baciomiculo's conduct, much less any indication that Baciomiculo somehow clothed Lakeland with *indicia* of ownership relative to the equipment. There is nothing in the record before us supporting that any such conduct occurred.

In short, the circuit court did not identify, and the Bohanon Defendants did not raise, any viable basis for dismissing Baciomiculo's conversion suit. Accordingly, the circuit court's judgment in favor of the Bohanon Defendants was erroneous and we REVERSE and we REMAND this matter for further proceedings not inconsistent with this opinion.

ALL CONCUR.