#24491, rev & rem
#24492, #24498-a-MILLER, Retired Justice

**2008 SD 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*
(#24491)

CHERYL D. JACOBSON,                    Plaintiff and Appellant,

  v.

KEVIN LEISINGER,                    Defendant and Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(#24492, #24498)

CHERYL D. JACOBSON,                    Plaintiff and Appellee,

v.

KEVIN LEISINGER,                    Defendant and Appellant

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE STUART L. TIEDE
Judge

\* \* \* \*

PATRICIA A. MEYERS of
Costello, Porter, Hill, Heisterkamp,
  Bushnell & Carpenter, LLP
Rapid City, South Dakota          **Attorneys for appellant (#24491).**
                                  Attorneys for appellee (#24492).


DAVID M. HOSMER
Yankton, South Dakota             **Attorney for appellant (#24492).**
                                  Attorney for appellee (#24491).

\* \* \* \*

ARGUED JANUARY 8, 2008

OPINION FILED **03/12/08**

#24491, #24492, #24498

MILLER, Retired Justice

[¶1.]　　　This opinion encompasses two separate appeals dealing with the same parties but involving independent issues and facts. Each will be addressed separately. In #24991, Cheryl Jacobson appeals the circuit court's decision denying her request for attorney fees, and in #24492 & #24498, Kevin Leisinger appeals the circuit court's dismissal of his defamation action against Jacobson.

### JACOBSON'S APPEAL FOR ATTORNEY FEES

[¶2.]　　　This dispute flows from our holding in *Leisinger v. Jacobson,* 2002 SD 108, 651 NW2d 693 (*Leisinger I*). In that case, this Court rejected a punitive damage award in the amount of $120,000 in favor of Leisinger and against Jacobson. We held that the punitive damage award should either be reduced to $25,000, or alternatively, should Leisinger reject the reduced award, a new trial could be conducted solely on the issue of punitive damages. *Id.* ¶25. Leisinger rejected the reduced award and thereafter failed to retry his case within one year of the remand, as required by SDCL 15-30-16. Therefore, he forfeited any right to the punitive damages which had previously been paid by Jacobson.

[¶3.]　　　Despite our decision in *Leisinger I,* Leisinger did not return the $120,000 to Jacobson. She therefore moved the circuit court for an order requiring the return of the money. In a memorandum opinion of December 20, 2002, Circuit Judge Severson held that "on August 21, 2002[, the date of the decision of *Leisinger I*], [Leisinger] had an obligation to return the benefits he had received from the prior Judgment – $120,000 – to [Jacobson]." Judge Severson entered a formal order to that effect on February 24, 2003. Leisinger did not comply with nor did he appeal

-1-

that order requiring him to return the money. (Apparently, no formal notice of entry of the order was served upon Leisinger.)

[¶4.] Jacobson then sought a contempt order against Leisinger for his failure to comply with the February 24, 2003 order, but the circuit court did not rule on that motion. Jacobson later filed a formal notice of entry of the February 24, 2003 repayment order. Leisinger then appealed that order, however, therein he merely contested the award of interest. This Court summarily affirmed the order holding that Leisinger's appeal was "without merit." (Appeal No. 23287).

[¶5.] On November 24, 2003, Jacobson filed a conversion action against Leisinger basing her claim on Leisinger's failure to comply with the February 24, 2003 order to return the $120,000. Leisinger countersued alleging many causes of actions, all independent of the money issues. The circuit court ultimately granted Jacobson's summary judgment motion holding that Leisinger's failure to return the money amounted to conversion as a matter of law.

[¶6.] While the foregoing conversion action was pending, Leisinger petitioned this Court for a rehearing of *Leisinger I,* and also sought to have Jacobson held in "contempt." He contended that *Leisinger I* was founded on Jacobson's perjured testimony. We denied the motion.

[¶7.] On December 21, 2004, Jacobson moved the circuit court for an order requiring Leisinger to show cause for his failure to comply with the February 24, 2003 order. At the hearing, the circuit court (Judge Zell) converted the order to a judgment. As a result of failing to be served with process, rather than for lack of

notice,[1] neither Leisinger nor his attorney attended the hearing. Jacobson, however, later filed a formal written motion requesting an amendment of the "order" to a "judgment." That motion was granted on February 24, 2005. Leisinger appealed such judgment which was ultimately summarily affirmed by this Court wherein we held the appeal was "without merit." (Appeal No. 23618). Jacobson ultimately recovered the $120,000 on October 28, 2005.[2]

[¶8.] Jacobson then sought recovery of the attorney fees she incurred in the various court proceedings required to recover the $120,000. The circuit court rejected her request, citing *Schuldies v. Millar,* 1996 SD 120, 555 NW2d 90. Jacobson appeals. We reverse and remand.

[¶9.] **Whether the circuit court erred by failing to award attorney fees**.

[¶10.] Jacobson argues that she has a right to recover the reasonable cost of attorney fees she specifically incurred in unwarranted legal proceedings to recover her wrongfully withheld property. We agree.

[¶11.] It is clear and undisputed that Leisinger wrongfully withheld Jacobson's $120,000. Subsequent to Leisinger's rejection of the reduced punitive damages award, in *Leisinger I,* the portion of the trial court judgment regarding

---

1. Leisinger's attorney had actual notice of the hearing, and the record reflects that a woman who attended the hearing was determined to have been sent by Leisinger.

2. On July 1, 2005, the money was deposited with the Minnehaha County Clerk pending an appeal of Judge Zell's order amending the original February 23, 2003 "order" to a "judgment." This Court summarily affirmed Judge Zell's order. Jacobson did not recover the money until after the summary affirmance of the appeal.

punitive damages was vacated. 2002 SD 108, ¶25, 651 NW2d at 701. Accordingly, "[a] judgment vacated on appeal is of no further force and effect." *Gluscic v. Avera St. Luke's,* 2002 SD 93, ¶18, 649 NW2d 916, 920 (citations omitted); *see also Hasse v. Fraternal Order of Eagles No. 2421 of Vermillion,* 2003 SD 23, ¶9, 658 NW2d 410, 413 (citations omitted); *Aune v. B-Y Water Dist.,* 505 NW2d 761, 764-65 (SD 1993) (quoting *Pendergast v. Muns,* 59 SD 135, 142, 238 NW 344, 347 (1931)). Therefore, Leisinger's rejection of the reduced award represented a simultaneous forfeiture of any rights in the previously acquired punitive damage award.

[¶12.]     We conclude that Leisinger indefensibly and unlawfully withheld the $120,000. Judge Severson's decision of December 20, 2002, granting Jacobson's request for an order requiring Leisinger to return the $120,000 with interest, unequivocally informed Leisinger that his retention of the funds was unlawful. Moreover, Leisinger cannot argue in good faith that he believed the money could legally remain in his possession pending any appeals; indeed, in the original suit Leisinger acquired the $120,000, constituting the punitive damage award, via a writ of execution *prior* to *Leisinger I* reversing the same award. Leisinger may not now complain of being harmed by the forced repayment as he bore the risk by taking the money prior to completion of the appellate process. *Hasse,* 2003 SD 23, ¶11, 658 NW2d at 413-14.

[¶13.]     Jacobson contends that although *Schuldies v. Millar, supra,* does not permit recovery of attorney fees for the actual litigation of the conversion lawsuit, reasonable attorney fees expended in pursuit of the money, unrelated to the conversion action, are separable and recoverable. We agree.

[¶14.] Generally, without specific authority to the contrary, attorney fees are not recoverable in civil actions. However, we agree with and now adopt the rationale that: ". . . in conversion cases, the reasonable and necessary expenses *incurred in recovering* the property are a proper element of damage. In such cases, the expense of recovery is a 'further pecuniary loss' recoverable under the Restatement rule." State v. Taylor, 506 NW2d 767, 768 (Iowa 1993) (citing RESTATEMENT (SECOND) OF TORTS § 927(2)(b) (1977) (other citations omitted) (emphasis added)). In this case, and as is the practice in other states, the damages must be bifurcated between "attorney fees incurred as a result of the conversion litigation as compared to attorney fees incurred in recovering possession of the property. The former are not compensable, the latter are." Motors Ins. Corp. v. Singleton, 677 SW2d 309, 315 (KyCtApp 1984).

[¶15.] Attorney fees are not generally recoverable in actions sounding in tort "except those fees incurred in *other litigation* which is necessitated by the act of the party sought to be charged." Grand State Property, Inc. v. Woods, Fuller, Shultz, & Smith, P.C., 1996 SD 139, ¶19, 556 NW2d 84, 88 (emphasis added) (noting that separate litigation necessitated by the misconduct of the other party may permit recovery of attorney fees); Isaac v. State Farm Mut. Auto. Ins. Co., 522 NW2d 752, 763 (SD 1994). Moreover, Leisinger, by his intentional and calculated action, left Jacobson with only one course of action, *i.e.,* further litigation. *See* Rorvig v. Douglas, 123 Wash2d 854, 862, 873 P2d 492, 497 (1994); RESTATEMENT (SECOND) OF TORTS § 914 cmt a (1977); Liles v. Liles, 289 Ark 159, 177, 711 SW2d 447, 456 (1986).

[¶16.]      Recovery of attorney fees expended by Jacobson to force Leisinger to release her money may be analogized with the case of *Foster v. Dischner,* 51 SD 102, 212 NW 506 (1927). In *Foster,* the plaintiff sued for attorney fees incurred in releasing an unlawful levy of his property. Although the property remained in the possession of the plaintiff, he was still entitled to attorney fees as damages incurred in releasing the levy. *Id.* at 507; *see also* Baird v. Liepelt, 62 IllApp2d 154, 156-57, 210 NE2d 1, 2 (1965). Here, Jacobson seeks similar damages, which resulted from her attempt to recover her property. Like the unlawful paper levy attached in *Foster,* Leisinger's unlawful possession of Jacobson's money amounted to a *de facto* levy/pledge. *See* RAY D. HENSON, SECURED TRANSACTIONS: UNDER THE UNIFORM COMMERCIAL CODE § 4—26 (West 1978). Indeed, Leisinger argued that if he "were to give said funds to [Jacobson], and [Leisinger] is later successful in a damage award against [Jacobson], then [Leisinger] will never recover said damages." Similar to the unlawful levy in *Foster,* Leisinger's argument demonstrates his desire to unlawfully withhold Jacobson's money as security for a future lawsuit that may never be allowed (and in fact never was allowed). Therefore, as in *Foster,* Jacobson is entitled to reasonable attorney fees incurred in recovering the release of her property. (However, as conceded at oral argument, Jacobson is not entitled to any attorney fees incurred after the February 24, 2003 order was converted into a judgment.)

[¶17.]      Additionally, although Jacobson's action may have been pleaded in conversion, the lawsuit is more complicated than the typical conversion pleadings. Here, Leisinger defied multiple court orders requiring him to repay the $120,000.

Instead of asserting his right to possess the money, Leisinger conjured up other legal arguments which did not proffer a genuine defense to his unlawful possession of the money. Moreover, all of Leisinger's legal arguments regarding the $120,000, or the interest accruing on the same, failed as meritless before the circuit court and this Court. Even after we rejected Leisinger's motion for a rehearing regarding the reversal of punitive damages, he still refused and failed to repay the money. We find that Leisinger "has not merely refused to pay a judgment, he has refused to obey an affirmative court order." DAN B. DOBBS, LAW OF REMEDIES: DAMAGES—EQUITY—RESTITUTION § 3.10(3) (West 2nd ed 1993). Therefore, attorney fees may be appropriately awarded at the discretion of the trial court upon a determination that the failure to comply with the order rose to the level of contempt. Although no contempt of court sanction was specifically implemented in this case, courts have inherent authority to act *sua sponte* and order the payment of opposing party's reasonable attorney fees if the party's actions rise to the level of litigation misconduct. *See id.*

[¶18.] We reverse and remand to the circuit court for proceedings consistent herewith.

## LEISINGER'S APPEAL OF DISMISSAL OF DEFAMATION CLAIM

[¶19.] Leisinger initially sued Jacobson for malicious prosecution. The lawsuit was based on false information Jacobson allegedly provided to police which led to Leisinger being falsely arrested nine times. He prevailed in that action. In the summer of 2001, approximately thirty hours after the jury found for Leisinger in the malicious prosecution lawsuit, a 911 emergency call was placed from

Jacobson's residence. When the police arrived they were unable to locate her. Eventually, the sound of "moaning" led the officers to Jacobson who was laying face down in calf-high grass about thirty to forty yards from her residence.

[¶20.]     Jacobson told the police that she heard an "alarm" alert and then was struck in the back of her head. She claimed to not know how she ended up face down in the grass. Detective Balfe examined Jacobson's head and saw no signs of an assault: "there was no redness or swelling or bleeding or anything at the back of her head." Therefore, no pictures were taken of the alleged injury.

[¶21.]     An ambulance transported Jacobson to the hospital where Detective Balfe interviewed her. She allegedly accused Leisinger of attacking her, stating: "Kevin had something to do with this. I don't have anything to prove it, but he had something to do with it." After further questioning, she allegedly continued to accuse Leisinger of being responsible for the purported attack. (No criminal charges flowed from this claimed attack.)

[¶22.]     In December 2003, based on these and other accusations related to the alleged 2001 attack, Leisinger sued Jacobson for defamation. This claim was contained in a permissive counter-claim to Jacobson's unrelated conversion lawsuit filed against Leisinger. Jacobson moved for summary judgment based on Leisinger's failure to bring the suit within the two-year statute of limitations.[3] The

---

3.     Jacobson also moved for summary judgment contending that no claim for defamation may be based on any communication made "[i]n any legislative or judicial proceeding, or in any other official proceeding authorized by law." SDCL 20-11-5(2). The circuit court denied this motion. Although Jacobson filed a notice of review on the denial, we do not reach this issue for two reasons. First, denials of summary judgment motions do not constitute final

(continued . . .)

circuit court granted Jacobson's motion, holding that the alleged act occurred over two years prior to Leisinger filing the lawsuit and that Leisinger had actual knowledge of the defamatory act over two years prior to the lawsuit being filed. Therefore, the circuit court granted Jacobson's motion for summary judgment and dismissed Leisinger's counter-claim. Leisinger appeals and we affirm.

[¶23.] **Whether the circuit court erred when it dismissed Leisinger's defamation claim.**

### STANDARD OF REVIEW

[¶24.] Our standard of review regarding summary judgment is well established:

> [W]e must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

Cooper v. James, 2001 SD 59, ¶6, 627 NW2d 784, 787 (citation omitted). When summary judgment is granted on a statute of limitations defense:

> The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled

---

(. . . continued)

judgments, and therefore are not reviewable without good cause. Big Sioux Twp. v. Streeter, 272 NW2d 924, 926 n1 (SD 1978) (noting unless a trial court indicates there is "good cause to appeal" we will not review orders that do not amount to a final judgment). Second, based on our holding, below, we need not address Jacobson's issue.

to judgment as a matter of law. When faced with "'a summary judgment motion where the defendant asserts the statute of limitations as a bar to the action and presumptively establishes the defense by showing the case was brought beyond the statutory period, the burden shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations[.]'" It is well settled that "'[s]ummary judgment is proper on statute of limitations issues only when application of the law is in question, and not when there are remaining issues of material fact.'" Generally, a statute of limitations question is left for the jury; however, deciding what constitutes accrual of a cause of action is a question of law and reviewed de novo.

*Id.* ¶7, 627 NW2d at 787 (citations omitted).

## ANALYSIS AND DECISION

[¶25.]     Leisinger argues that the circuit court erred when it interpreted the statute of limitations for defamation actions as accruing on occurrence of the tort rather than his discovery. Moreover, he claims that application of the "discovery rule" would position his pursuit of this action within the statute of limitations.

[¶26.]     The statute of limitation for a defamation action is provided in SDCL 15-2-15.[4] Thereunder, a defamation lawsuit must be commenced within two years from the accrual of the cause of action.

[¶27.]     Leisinger first argues that the "accrual" date of his cause of action for defamation, under SDCL 15-2-15, relates to the date when he, the victim, had actual or constructive notice of the defamation, citing *Strassburg v. Citizens State*

---

4.     Pertinent portion of SDCL 15-2-15 reads:
       Except where, in special cases, a different limitation is
       prescribed by statute, the following civil actions other than for
       the recovery of real property can be commenced only within two
       years after the cause of action shall have accrued:
       (1)     An action for libel, slander, . . .

-10-

*Bank,* 1998 SD 72, ¶10, 581 NW2d 510, 514 (stating "statute of limitations ordinarily begins to run when the plaintiff either has actual notice of a cause of action or is charged with notice") and other similar cases as authority. However, none of the cases cited specifically interpret SDCL 15-2-15, nor do they discuss defamation. *See Strassburg,* 1998 SD 72, ¶10, 581 NW2d at 514 (conversion claim accruing under SDCL 15-2-13); Wassink v. Van De Stroet, 1999 SD 92, ¶¶8, 12, 598 NW2d 213, 215-16 (breach of contract, conversion, unjust enrichment (constructive trust), accruing under SDCL 15-2-13); Huron Center, Inc. v. Henry Carlson Co., 2002 SD 103, ¶¶5, 11, 650 NW2d 544, 546-47 (breach of contract accruing under SDCL 15-2-13).

[¶28.] As noted earlier, Leisinger's cause of action for defamation is governed by SDCL 15-2-15. Generally the accrual date for a defamation action begins on the publication[5] of the defamatory act. Davenport v. City of Corning, 2007 WL 3085797, at *6 (IowaCtApp 2007); Hayes v. Blue Cross Blue Shield of Minnesota, Inc., 21 FSupp2d 960, 978 (DMinn 1998); LaPan v. Myers, 241 Neb 790, 792, 491 NW2d 46, 49 (1992); White v. Fawcett Publications, 324 FSupp 403, 404-05 (DCMo 1971); *see also* Francis M. Dougherty, *Limitation of Actions: Time of Discovery of Defamation as Determining Accrual of Action,* 35 ALR4th 1002, § 2 (1985).

[¶29.] Alternatively Leisinger argues for the adoption of the "inherently undiscoverable" doctrine. He asserts that because the alleged defamatory material

---

5. *Black's Law Dictionary* defines publication, in the defamation context, as: "[t]he communication of defamatory words to someone other than the person defamed." 1242 (7thed. 1999).

was statutorily confidential[6] he cannot be charged with having knowledge of the acts until he had actual or constructive notice of the defamation, claiming that where the defamatory act is "secretive or inherently undiscoverable [due to the] nature of the publication" courts have permitted the more relaxed "discovery rule" for defamation. Straheli v. Smith, 548 So2d 1299, 1303 (Miss 1989) (adopting the "discovery rule" for libel in the limited occasions when the publication is "secretive or inherently undiscoverable"). Although it is persuasive, we need not reach this limited application of the so-called "discovery rule."

[¶30.]    Leisinger's appeal must fail because of the following. In Leisinger's own affidavit he stated: "A Minnehaha deputy sheriff mentioned to me sometime during the *Summer of 2001* that Jacobson had alleged to law enforcement that I assaulted her at her home. I had nothing to do with this I did not assault her." (Emphasis added). By Leisinger's own admission he knew of the alleged defamation in the summer of 2001, yet failed to commence any action until December 11, 2003, well over two years after he clearly had actual knowledge of the defamatory statements. This Court has stated:

> when a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony, and cannot

---

6.    SDCL 23-5-11 states that information related to ongoing investigation may be withheld from the public. SDCL 23A-28B-36 plainly states that information provided to the Crime Victims' Compensation Program is confidential. Jacobson's alleged defamatory statements were made to the police and to the Crime Victims' Compensation Program.

> successfully complain if he is nonsuited or the court directs a verdict against him.

Miller v. Stevens, 63 SD 10, 16, 256 NW 152, 155 (1934) (citation omitted). Moreover, during oral arguments Leisinger's attorney conceded that Leisinger had constructive knowledge of the alleged defamation on December 10, 2001, over two years prior to filing the lawsuit.[7]

[¶31.] The defamation claim was untimely and must fail. Leisinger failed to bring suit before the tolling of the statute of limitations.

[¶32.] We reverse and remand Jacobson's request for attorney fees (#24991) and affirm the dismissal of Leisinger's defamation claim (#24492 & #24498).

[¶33.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and ZINTER, Justices, concur.

[¶34.] MILLER, Retired Justice, sitting for MEIERHENRY, Justice, disqualified.

---

7. Although Leisinger claims his permissive counterclaim relates back to the filing of Jacobson's conversion claim, effectively tolling the statute of limitations, this argument is without merit. Only compulsory counterclaims benefit from the relation back doctrine. *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1425 at 189-90 (West 1990). Indeed, even in the cases cited to this Court by Leisinger, *Aramony v. United Way of America* and *MacDonald v. Riggs*, permissive counterclaims are not permitted to benefit from the relation back doctrine. Aramony v. United Way of America, 969 FSupp 226, 231 (SDNY 1997) (stating "counterclaim tolls its limitations period at the filing of the initial complaint if it is compulsory, but not until the service of the counterclaim if it is permissive") (citations omitted); MacDonald v. Riggs, 166 P3d 12, 18 (Alaska 2007) (stating that the counterclaim is compulsory and relates back "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim") (citation omitted).