#27906-a-LSW
**2017 S.D. 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

In the Matter of the Estate of
FRED W. FINCH, Deceased.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MOODY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. PARDY
Judge

* * * *

JOEL A. ARENDS
Sioux Falls, South Dakota

Attorney for appellant
Dean Anderson.


JOHN A. SHAEFFER of
Shaeffer Law Office
Flandreau, South Dakota

Attorney for appellee Coral
Headrick as Personal
Representative.


WILSON M. KLEIBACKER of
Lammers Kleibacker, LLP
Madison, South Dakota

Attorneys for appellee Coral
Headrick personally.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 22, 2017
OPINION FILED **04/12/17**

WILBUR, Justice

[¶1.] In this appeal from the settlement of an estate, one beneficiary challenges the award of expenses, disbursements, and attorney's fees to the personal representative. We affirm.

## Background

[¶2.] Coral Headrick served as Fred Finch's attorney-in-fact from 2009 until Finch's death in November 2012. Headrick had been a close friend and neighbor to Finch and his now-deceased wife Reva. Finch had no children. He died when he was 91 years old. Finch's Last Will and Testament nominated Headrick as personal representative of his estate. In November 2012, the circuit court issued letters appointing Headrick as personal representative and admitted Finch's Will to informal probate. On February 22, 2013, Headrick filed an inventory for the estate, certifying the estate's assets and values of those assets. She filed a revised inventory in June 2013, which set forth the gross value of the estate at $4,218,449.01.

[¶3.] Dean Anderson and Dale Anderson are Finch's nephews and beneficiaries of the estate. Sharlene Swier is Finch's niece and also a beneficiary of the estate. On November 18, 2013, Dale and Swier petitioned for supervised administration of the estate and for removal of Headrick as personal representative. They asserted that they had conducted an investigation into Headrick's use of the power of attorney "to obtain items for herself and a family member" from 2009 to 2012. The power of attorney contained no provision for gifting or self-dealing. Dale and Swier alleged that the investigation revealed that Headrick had received, via

self-dealing, expensive jewelry, a quilting machine, trips to the salon, a washer and dryer, among other items. Dale and Swier claimed to have made a demand upon Headrick for repayment of the funds but could not "reach a fair agreement for repayment of the money to the Estate." Dale and Swier also challenged Headrick's payment of her personal representative fees and the payment of attorney's fees out of the estate. They asked the circuit court for a hearing.

[¶4.] The record reveals that, in October 2013, Headrick returned $31,491.14 to the estate. She claimed she did so because she and the estate's counsel became aware of this Court's decision in *Bienash v. Moeller*, 2006 S.D. 78, 721 N.W.2d 431. In *Bienash*, we held that, absent a specific right in the papers creating the power of attorney, an attorney-in-fact has no right to self-deal and cannot use oral extrinsic evidence to prove that the right to self-deal was intended. *Id.* ¶ 24. Although Headrick alleged that each gift was made at the direction or request of Finch and that, in most instances, Finch specifically told her to write the checks, she nevertheless returned a sum she believed represented self-dealing based on her and the attorney's examination of the checking account.

[¶5.] In April 2014, Headrick filed a verified statement for informal closing of the estate. Dale and Swier objected to Headrick's verified statement and petitioned for review of compensation and attorney's fees. They acknowledged that Headrick had returned $31,491.14 to the estate but claimed that the amount was less than she owed. Dale and Swier alleged that Headrick owed $1,100,000. They also disputed Headrick's payment of personal representative fees in the amount of $60,000 because in their view it was in excess of that allowed under SDCL 29A-3-

719. Dale and Swier challenged the payment of attorney's fees totaling $89,730.86 as improper and excessive. Dean filed a motion to join Dale and Swier's petition for supervised administration and removal of personal representative. Dean also filed a separate petition for termination of Headrick as personal representative and for the appointment of a special administrator.

[¶6.] In September 2014, Headrick replied to the petitions for her removal. She noted that in addition to the October 2013 reimbursement, she had reimbursed the estate $24,663.70 after reviewing the debits and credits on a specific bank account. Headrick asserted that after reimbursing the estate in this amount, she owed the estate no more money. She further asserted that her fees as personal representative were warranted because she had filed returns, paid taxes, conveyed real estate, sold personal property, sold Finch's home, made sure the bequests in the Will were paid, obtained insurance proceeds, paid bills and indebtedness, in addition to other activities. Headrick argued that the amount of attorney's fees was reasonable because the attorney had spent over 165 hours working on the estate. Headrick requested that the circuit court permit her to finish her duties and deny the petitions for her removal.

[¶7.] The circuit court held a hearing in September 2014 and, thereafter, issued an order appointing a special administrator "to investigate and return a written report within ninety (90) days[.]" The court directed the special administrator to investigate the following issues:

> a. The issue of self-dealing by Coral Headrick while serving as the duly appointed attorney-in-fact for Fred Finch.
> b. The issue concerning the personal representative fees charged to the Estate by Coral Headrick and the amount of

requested reimbursement for the attorney's fees of John Shaeffer while serving as the attorney for the personal representative.

c. Whether the beneficiaries should be compensated for their attorney's fees pursuant to SDCL 29A-3-720, for any benefit provided to the Estate.

d. Whether there are any claims that may be pursued by the Estate against Coral Headrick for undue influence as to any matters including any non-probate transfers and any testamentary dispositions.

e. Whether the Estate is entitled to any statutory interest and/or punitive damages for claims of the Estate against Coral Headrick.

The court postponed ruling on Headrick's removal as personal representative.

[¶8.] On January 16, 2015, the special administrator filed its report with the circuit court. The report identified that the special administrator spoke with counsel and with the parties. The special administrator also spoke with Finch's physician, with a number of Finch's friends, and with the individuals primarily responsible for Finch's banking activities. The special administrator reviewed Headrick's deposition taken in 2014. In its report, the special administrator first separately addressed each issue listed by the circuit court and then provided a fourteen-page summary of the "Investigation Information Background" supporting the special administrator's answers to the court's questions. We address only those issues relevant on appeal.

[¶9.] In regard to Headrick's self-dealing, the special administrator found that self-dealing occurred. The special administrator noted that Headrick reported that virtually all gifting was done at Finch's request. The special administrator concluded:

> The amounts involved in the self-dealing appear to be with the knowledge and acquiescence of Fred Finch. None of them involve self-dealing with the investment accounts at the bank where Coral Headrick was jointly named on some of them, but virtually all of them involved the writing of checks when Mr. Finch was along or at his direction.

[¶10.] On the issue of Headrick's fees as personal representative and Attorney Shaeffer's attorney's fees, the special administrator noted that both Headrick and Shaeffer claimed that Finch wanted them to be paid a special rate. They asserted that Finch told them Headrick was to be paid at 2.5% of the value of the estate and Shaeffer at 3% because Finch felt that the handling of his estate would not be easy. The special administrator concluded that "[t]here exists a question" whether Headrick would be entitled to any more than authorized by SDCL 29A-3-719(c) because Finch did not reduce his wishes to writing. The special administrator, however, found that Headrick's time spent on the estate was "more work than would be present in your normal estate." The special administrator recommended excluding Headrick's time spent on the issue of self-dealing but recommended awarding her compensation for her other time because "numerous requests, by counsel, not relative to self-dealing would arguably be compensable."

[¶11.] Although the issue whether Headrick unduly influenced Finch is not challenged on appeal, we note that the special administrator concluded that the facts did "not disclose the utilization of any undue influence of Coral Headrick as to Fred Finch." The special administrator reported that the witnesses indicated "that, even prior to Reva Finch, Fred Finch's wife's death that Coral did everything she could to assist the Finches and subsequent to Reva's death to Fred Finch." The special administrator found that "this devotion is a primary reason for the gifts and

bequests. There is no evidence that any of the transfers by Mr. Finch to Coral Headrick were at her request."

[¶12.]       At the conclusion of the report, the special administrator provided a summary:

> Most of the evidence I secured is not controverted. There is no question that Coral Headrick wrote out some checks or used a debit card for her personal benefit. The evidence would indicate that this was done with Mr. Finch's knowledge and at his request. Regardless of that fact the Bienash decision would appear to be quite clear without something in writing that this should not have been done. . . . .
>
> It appears that Coral Headrick was basically a significant caretaker for both Mr. and Mrs. Finch up until her death and then Mr. Finch thereafter. Especially after Mrs. Finch's death, Fred became frail physically, and needed her assistance or would have had to go into a rest home. There is no evidence that his mental capabilities failed.
>
> Fred Finch was extremely active in supervising his investments and was the only person that called any shots to those investments. There is no evidence that the gifting or inclusion of Coral Headrick as a joint owner was done at anybody's request other than Fred and likewise there does not exist any evidence of undue influence or even knowledge prior to it happening of Coral Headrick. Coral Headrick's influence would appear to be solely because of her commitment to his care and well-being.
>
> Fred apparently, rightfully or wrongfully became irritated with certain nephews and his nieces husband relating to a perception of them putting him in a nursing home or requests for money or inquiry relating to his estate, or failure to visit.
>
> Where there's some issues that are probably remaining I believe all the parties except one, would be interested in mediation.

After the circuit court received the report, it recommended that the parties negotiate or mediate to resolve the final issues.

[¶13.]	In June 2015, Headrick filed a motion for the court to order mediation, which the circuit court granted. Following mediation, the special administrator issued a report regarding the payment of attorney's fees. The special administrator recommended that Attorney Shaeffer be paid $300 per hour, which reflected "an hourly fee in the area of that charged by experienced probate attorneys." The special administrator then recommended that the court deduct 5 hours at the rate of $300 per hour from Attorney Shaeffer's fee because, in the special administrator's view, those payments would relate to Headrick's self-dealing.

[¶14.]	In regard to the issue of Headrick's self-dealing, the special administrator reported that the parties, except Dale, had agreed that Headrick would repay the estate an additional $110,000 to resolve the matter. Dale did not agree and "as a practical matter left the mediation prior to the referenced resolution." The special administrator attended the mediation and indicated to the court that "this settlement is in the best interest of the estate."

[¶15.]	In November 2015, the special administrator filed an amended verified statement for informal closing of the estate. Dale and Swier filed a limited objection, contesting the hourly rate recommended for Attorney Shaeffer's fees. Dean separately objected to the entire amended statement for an informal closing of the estate. On April 12, 2016, the circuit court held a hearing on the parties' objections. After the hearing, Dean and Headrick submitted separate proposed findings and conclusions.

[¶16.]	On May 17, 2016, the circuit court entered findings and conclusions and an order. It incorporated the special administrator's report. It adopted the

special administrator's report "as it relates to the Personal Representative's fees" and held that Headrick was entitled to retain $13,355.42 in fees as personal representative. The court concluded that Headrick's "acts in defending the estate were done in good faith, and she is entitled to reasonable fees incurred for those actions under SDCL 29A-3-720." The court found no evidence of undue influence by Headrick.

[¶17.]     The court further found that the fees charged by Attorney Shaeffer were "in the reasonable range of rates for attorneys with substantial expertise and experience in the specialized area of litigation." The court opined that the "estate is complex due to its inclusion of property ranging from real estate to investments." The court, therefore, found "said fees to be reasonable following the factors set forth in *In re Estate of Mathison*, 468 N.W.2d 400 (S.D. 1991)." The court adopted the special administrator's recommendation to pay Attorney Shaeffer $300 per hour and its conclusion that Attorney Shaeffer acted in good faith defending the personal representative for the benefit of the estate and in defending himself.

[¶18.]     The court entered an order denying Dale and Swier's limited objection and Dean's full objection to the amended final accounting filed by the special administrator. Dean appeals, asserting the following issues:

1.  The circuit court erred when it granted Headrick's request for expenses and disbursements for her actions as personal representative.

2.  The circuit court erred when it allowed Headrick to recover partial attorney's fees for the estate's attorney.

## Analysis

[¶19.]     Dean argues that the circuit court erred when it allowed Headrick to retain $13,355.42 in fees as personal representative because Headrick engaged in self-dealing while acting as Finch's fiduciary.  In Dean's view, the fact Headrick engaged in self-dealing means she could not have acted in good faith as required by SDCL 29A-3-720.  He also argues that Headrick prolonged the litigation and intentionally created loss to the estate by concealing her self-dealing and resisting the efforts of Dale, Dean, and Swier to recover assets.

[¶20.]     SDCL 29A-3-720 provides in part that: "Any personal representative or person nominated as personal representative who defends or prosecutes any proceeding in good faith, whether successful or not, is entitled to receive from the estate necessary expenses and disbursements, including reasonable attorney's fees." It also allows for an award of "necessary expenses and disbursements, including reasonable attorney's fees, to any person who prosecuted or defended an action that resulted in a substantial benefit to the estate."  We review an award of fees for an abuse of discretion.  *See In re Bickel*, 2016 S.D. 28, ¶ 50, 879 N.W.2d 741, 755 (reviewing an award of attorney's fees and personal representative fees).

[¶21.]     In *In re Estate of Klauzer*, we recognized that this Court had not yet defined good faith and examined definitions from other courts.  2000 S.D. 7, ¶¶ 33-35, 604 N.W.2d 474, 481-82.  We identified that in North Dakota, good faith means the personal representative's conduct was "free from fraud[.]"  *Id.* ¶ 34 (quoting *Oliver v. City of Larimore,* 540 N.W.2d 630, 634 (N.D. 1995)).  And in Nebraska, good faith has been described to mean "honesty in fact concerning conduct or a

transaction" and "is distinguished from mere negligence or an honest mistake." *Id.* ¶ 35 (quoting *In re Estate of Watkins,* 501 N.W.2d 292, 296 (Neb. 1993)). Courts can ask whether the record indicates that the personal representative "intentionally caused a loss" to the estate or to any heir. *Id.* (quoting *Watkins*, 501 N.W.2d at 297). Also, did the personal representative prolong "litigation in an effort to increase the eventual compensation allowed by the county court"? *Id.*

[¶22.] Although Headrick engaged in the type of self-dealing prohibited by *Bienash*, her self-dealing does not mean that every act she took as personal representative lacked good faith. *Bienash* created a bright-line rule regarding the admissibility of oral extrinsic evidence to prove a right to self-deal when that right does not exist under the explicit terms of the power of attorney. 2006 S.D. 78, ¶ 24, 721 N.W.2d at 437. But this case does not involve what rights Headrick had as Finch's attorney-in-fact. This case concerns the right of a personal representative to recover fees under SDCL 29A-3-720. Here, the circuit court found that Headrick's actions were free from fraud. The court also found that Headrick's actions as personal representative were on behalf of the estate and for the benefit of the estate.

[¶23.] Additionally, the court adopted the special administrator's report, which recommended that Headrick's actions as personal representative—not related to self-dealing—met the good-faith requirement. The special administrator found, and Dean does not dispute, that Headrick's time spent on the estate was "more work than would be present in your normal estate." Dean also does not dispute that Headrick, as personal representative, was required to respond to

"numerous requests, by counsel, not relative to self-dealing[.]" We affirm the court's ruling that Headrick was entitled to reasonable fees incurred.

[¶24.]    Dean next claims that the court erred when it granted Headrick's request to recover attorney's fees from the estate for the work Attorney Shaeffer performed on behalf of the estate. He claims that the fees allowed were in fact fees incurred for the attorney's work in defending Headrick's improper self-dealing. Dean also asserts the circuit court erred when it issued a finding that Attorney Shaeffer's billable hours were not challenged. Dean claims he challenged Attorney Shaeffer's billable hours. As proof, Dean refers this Court to Attorney Shaeffer's statement to the circuit court—"My fees are being attacked . . . on the basis that approximately 85 hours of the 225 hours I've spent are somehow not related to the estate." Ultimately, Dean argues that the circuit court should have only allowed Headrick to recover $42,900 to pay Attorney Shaeffer instead of $71,536.19. In the alternative, Dean asks this Court to reverse and remand to allow the circuit court to address his dispute of Attorney Shaeffer's fees and examine whether the attorney's fees relate to the defense of Headrick's self-dealing.

[¶25.]    Headrick responds that Dean did not provide a *specific* objection challenging the time Attorney Shaeffer spent on the estate or any objection to the specific time charged in the itemized bill from Attorney Shaeffer. Headrick also claims that the special administrator specifically addressed Dean's claim that Attorney Shaeffer's hours were expended in defense of Headrick's self-dealing, and because the court adopted the special administrator's report, the court addressed Dean's dispute over Attorney Shaeffer's billable hours.

[¶26.] We review an award of attorney's fees to a personal representative for an abuse of discretion. *See Bickel*, 2016 S.D. 28, ¶ 50, 879 N.W.2d at 755. Although the circuit court entered a finding that Attorney Shaeffer's billable hours were not disputed, it seems that finding relates to the fact the parties did not dispute the actual hours submitted by Attorney Shaeffer. The record reveals that Dean disputed and the court addressed whether Attorney Shaeffer's hours submitted related to his actions for the benefit of the estate or to his defense of Headrick's improper self-dealing. The court examined the parties' arguments, adopted the special administrator's report, and reduced Attorney Shaeffer's hours based on the hours spent on his defense of Headrick's self-dealing.

[¶27.] The circuit court found that Attorney Shaeffer is an experienced probate attorney, acted in good faith when defending the personal representative for the benefit of the estate, and acted in good faith in defending his own actions. The court also found that Headrick's "acts in defending the estate were done in good faith, and that she's entitled to reasonable attorney's fees incurred for those actions[.]" The court, therefore, adopted the special administrator's report recommending a deduction of 5 hours at a rate of $300 per hour. From our review of the record, the court did not abuse its discretion.

[¶28.] Affirmed.

[¶29.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON and KERN, Justices, concur.

-12-