#28216-r-JMK
**2017 S.D. 89**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOHN BERGGREN,                                    Plaintiff,

　　v.

JEFF SCHONEBAUM d/b/a
SCHONEBAUM QUARTER HORSES,          Defendant,

and

LAWRENCE MEENDERING,                      Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
GREGORY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN L. BROWN
Judge

* * * *

JAKE FISCHER
SCOTT SWIER
MICHAEL A. HENDERSON of
Swier Law Firm, Prof. LLC                 Attorneys for former plaintiff
Corsica, South Dakota                      attorney Jake Fischer and
                                           appellant.


GEORGE F. JOHNSON of
Johnson Pochop & Bartling Law Office
Gregory, South Dakota                      Attorneys for defendant and
                                           Appellee.

* * * *

ARGUED ON
NOVEMBER 7, 2017
OPINION FILED **12/20/17**

#28216

KERN, Justice

[¶1.] Lawrence Meendering filed a motion to disqualify opposing counsel Jake Fischer for an alleged violation of the South Dakota Rules of Professional Conduct. Meendering also sought attorney's fees from Fischer for costs incurred in bringing the motion. The circuit court, citing our decision in *Jacobson v. Leisinger*, 2008 S.D. 19, 746 N.W.2d 739 (*Leisinger II*), granted the motion. In imposing fees, the court reasoned that sanctions were appropriate because the motion to disqualify was "other litigation" resulting from Fischer's alleged ethical violation. We reverse.

## Facts and Procedural History

[¶2.] In 2009, Meendering loaned Jeff Schonebaum approximately $17,000 to purchase a stud horse named Peppy from Heaven (Peppy). In April 2013, Schonebaum sold Peppy to John Berggren for approximately $11,000. Berggren intended to use Peppy to artificially inseminate other horses. However, an appraisal of Peppy's semen indicated it was unsatisfactory and too thin to freeze. In January 2014, Berggren sued Schonebaum, claiming Schonebaum misrepresented Peppy's ability to breed. Fischer of Swier Law Firm represented Berggren in the matter.

[¶3.] Sometime later in 2014, Meendering paid a visit to Schonebaum regarding personal loans Meendering made to him. Meendering, suspecting Schonebaum would not settle the remaining debts, visited an attorney in Wagner, South Dakota, on the return trip home. The attorney expressed his disinterest in the case and recommended Meendering contact the Swier Law Firm in Avon, South Dakota. Later that day, Meendering drove to Avon and met with Fischer in an

-1-

unscheduled visit. Meendering claims the two discussed the money he loaned Schonebaum. According to Meendering, Fischer failed to disclose that he represented Berggren in a lawsuit against Schonebaum.

[¶4.] On January 13, 2015, Fischer deposed Schonebaum. During the deposition, the following exchange occurred:

> **Q.** Do you know Lawrence Mendring [sic]?
> **A.** Yeah.
> **Q.** Who is he?
> **A.** He's my banker.
> **Q.** Where is—what bank does he work for?
> **A.** He didn't work for no bank. He was a private lender.
> **Q.** And where does he live?
> **A.** Sheldon, Iowa.
> **Q.** Was he involved in the purchase of Peppy?
> **A.** Yeah.
> **Q.** How so?
> **A.** He was my lender.
> **Q.** Tell me how that deal worked.

Schonebaum then explained the terms of the loan he received from Meendering. When asked whether he still banked with Meendering, Schonebaum responded that he did not.

[¶5.] In a letter sent by Fischer to Meendering dated August 24, 2015, Fischer introduced himself as the lawyer Meendering met the year prior. Fischer explained that he was currently involved in a lawsuit against Schonebaum regarding the sale of Peppy. Fischer requested Meendering contact him by phone to speak about Schonebaum. Schonebaum and Meendering claim Meendering and Fischer later spoke over the phone.

[¶6.]     In October 2015, Berggren amended his complaint against Schonebaum to include Meendering as a defendant. Berggren alleged that Meendering formed a partnership with Schonebaum to purchase, use, and sell Peppy and that Meendering was jointly liable for Schonebaum's wrongful conduct. On August 18, 2016, Meendering filed a motion seeking Fischer's disqualification from the case. Meendering also requested sanctions in the form of attorney's fees for costs incurred in bringing the motion, arguing that Fischer violated Rule 1.18 of the Rules of Professional Conduct.[1] Rule 1.18 provides in part that an attorney shall not use or reveal information learned in a consultation with a prospective client. SDCL ch. 16-18 app. Rule 1.18(b). Further, an attorney shall not "represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter[.]" SDCL ch. 16-18 app. Rule 1.18(c).

[¶7.]     On October 12, 2016, the circuit court held a hearing on the motion to disqualify; and on October 24, 2016, granted the motion disqualifying Fischer from the case. The court also requested further briefing on the issue of attorney's fees, which the parties provided. On February 27, 2017, the circuit court issued a memorandum opinion awarding Meendering $6,416.18 in attorney's fees assessed against Fischer for expenses incurred in connection with the motion to disqualify.

---

1.     Meendering also moved to disqualify Swier Law Firm under Rule 1.10, which generally provides that an attorney's conflicts of interest are imputed to all other members of the attorney's firm.

The court noted that Meendering cited no specific statutory authorization for an award of attorney's fees arising out of a violation of the Rules of Professional Conduct.  Further, the court observed Meendering never made a formal request for sanctions under SDCL 15-6-11(c) (Rule 11).  Nevertheless, the court, relying on *Leisinger II*, awarded Meendering attorney's fees.  In *Leisinger II,* we held that attorney's fees may be awarded when the fees are "incurred in *other litigation* which is necessitated by the act of the party sought to be charged."  2008 S.D. 19, ¶ 15, 746 N.W.2d at 743.

[¶8.]       Fischer appeals from the circuit court's order awarding attorney's fees,[2] arguing that *Leisinger II* is inapplicable and that attorney's fees are not appropriate under Rule 11.  Meendering, as appellee, argues that attorney's fees were an appropriate sanction under the "other litigation" exception in *Leisinger II*.[3]

### Analysis and Decision

[¶9.]       "For purposes of awarding attorney fees, South Dakota subscribes to the 'American Rule.'"  *Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 32, 827 N.W.2d 55, 67.  Generally, the American Rule requires that each party in a civil case bear their own attorney's fees.  *Id.*  However, the parties may enter into an agreement entitling the prevailing party to attorney's fees, and attorney's fees may be charged against a party if authorized by statute.  *Id.*; *see also* SDCL 15-17-38.  In

---

2.    Fischer does not appeal the circuit court's order disqualifying him from the case.

3.    Although Schonebaum d/b/a Schonebaum Quarter Horses was named as a defendant/appellee, Schonebaum, through counsel, indicated he would not file a brief in this matter.

determining whether a statute permits recovery of attorney's fees from an opposing party, "[t]his Court has rigorously followed the rule that authority to assess attorney fees may not be implied, but must rest upon a clear legislative grant of power." *Rupert*, 2013 S.D. 13, ¶ 32, 827 N.W.2d at 67.

[¶10.]    Normally, an award of attorney's fees is reviewed for an abuse of discretion. *See In re Estate of Finch*, 2017 S.D. 15, ¶ 20, 893 N.W.2d 783, 788. However, the circuit court concluded that attorney's fees were appropriate in this case based on an analysis of *Leisinger II*, and we review conclusions of law de novo. *Tri-City Assocs., L.P. v. Belmont, Inc.*, 2014 S.D. 23, ¶ 19, 845 N.W.2d 911, 916.  The court, in awarding attorney's fees, observed that "[Meendering] is apparently relying on the [circuit] court's inherent powers to enforce the Rules of Professional Responsibility."  Citing our holding in *Leisinger II* as "credence [for] such an argument," the court conflated its inherent authority to enforce the Rules with *Leisinger II's* "other litigation" exception to the American Rule.  The court stated that it "believe[d] that the Motion to Disqualify constitutes 'other litigation which is necessitated by the act of the party sought to be charged' and as such, attorney fees as a sanction for ethics violations in this litigation [were] warranted."

[¶11.]    However, neither *Leisinger II* nor its antecedents support an award of attorney's fees on this record.  *Leisinger II* followed a previous decision by this Court, *Leisinger v. Jacobson*, 2002 S.D. 108, 651 N.W.2d 693 (*Leisinger I*), reversing an award of $120,000 in punitive damages in favor of Jacobson, the plaintiff. *Leisinger II*, 2008 S.D. 19, ¶ 2, 746 N.W.2d 739, 741.  In *Leisinger I*, we held that the award should be reduced to $25,000. *Id.*  In the alternative, we authorized a

new trial on the issue of punitive damages if Leisinger rejected the reduced award. *Id.* Leisinger rejected the award. *Id.* However, Leisinger failed to retry the case within one year of the remand pursuant to SDCL 15-30-16 (repealed 2011), thereby forfeiting any right to punitive damages. *Id.* Regardless, Leisinger refused to return the $120,000 to Jacobson, who in turn obtained a court order requiring return of the money. *Id.* ¶ 3. When Leisinger failed to comply with the court order, Jacobson filed a conversion action against Leisinger. *Id.* ¶ 5. After successfully recovering the $120,000, Jacobson moved for attorney's fees related to the various court proceedings required to reclaim her money, which the circuit court denied. *Id.* ¶ 8, 746 N.W.2d at 742.

[¶12.]	Jacobson appealed the denial, and we reversed and remanded. *Id.* Although we observed that "[g]enerally . . . attorney fees are not recoverable in civil actions," we "adopt[ed] the rationale that . . . 'in conversion cases, the reasonable and necessary expenses *incurred in recovering* the property are a proper element of damage.'" *Id.* ¶ 14, 746 N.W.2d at 743 (quoting *State v. Taylor*, 506 N.W.2d 767, 768 (Iowa 1993)).[4] In so holding, we analogized the case to *Foster v. Dischner*, 51 S.D. 102, 212 N.W. 506 (1927). *Dischner* involved a plaintiff suing for attorney's

---

4.	We also observed that "the lawsuit [in *Leisinger I* was] more complicated than the typical conversion pleadings" because "Leisinger defied multiple court orders" and proffered meritless legal defenses. *Leisinger II*, 2008 S.D. 19, ¶ 17, 746 N.W.2d at 743-44. We held that "attorney fees may be appropriately awarded at the discretion of the trial court upon a determination that the failure to comply with the order rose to the level of contempt." *Id.* Although a violation of the Rules of Professional Conduct arguably "rise[s] to the level of litigation misconduct," the circuit court here made no finding that Fischer was in contempt or "refused to obey an affirmative court order." *See id.* Additionally, the results of the disciplinary proceeding referenced in Fischer's reply brief are not included in this record.

fees after the defendant subjected his land to an unlawful levy. 212 N.W.2d at 506. The plaintiff received an award of attorney's fees, which was affirmed on appeal. *Id.* at 507. In *Leisinger II*, we noted that like in *Dischner*, Jacobson sought "similar damages, *which resulted from her attempt to recover her property.*" 2008 S.D. 19, ¶ 16, 746 N.W.2d at 743 (emphasis added). Leisinger's actions "left Jacobson with only one course of action, i.e., further litigation." *Id.* ¶ 15. We also reiterated that attorney's fees may be recovered in actions sounding in tort if "incurred in *other litigation* which is necessitated by the act of the party sought to be charged." *Id.*

[¶13.] In *Grand State Property, Inc. v. Woods, Fuller, Shultz, & Smith, P.C.*, a real estate company sued the Woods law firm for legal malpractice, breach of fiduciary duties, and punitive damages. 1996 S.D. 139, ¶ 1, 556 N.W.2d 84, 85. The circuit court granted summary judgment in favor of Woods, and we affirmed. *Id.* With respect to legal malpractice and breach of fiduciary duties, the circuit court "found . . . that Grand had failed to make any showing of damages suffered by Grand on either claim[.]" *Id.* ¶ 17, 556 N.W.2d at 88. Grand argued that it incurred "litigation expenses in attempting to enforce [a] light easement which [a Woods attorney] had allegedly advised was valid[.]" *Id.* ¶ 19. However, in holding that the "other litigation" exception to the American Rule did not apply, we observed that "[t]he underlying declaratory judgment action for which Grand claims entitlement to a return of attorney fees was not necessitated by the conduct or advice rendered by Woods." *Id.*

[¶14.] Our reference to the "other litigation" exception in *Grand* comes from *Hill v. Okay Construction Co.*, 252 N.W.2d 107, 121 (Minn. 1977). In *Hill*, both the

alleged sellers of a business and its alleged buyer were represented by a single attorney. *Id.* at 111. The parties disputed whether the alleged sellers actually sold the business or whether the alleged buyer simply lent them money and received the title to their building and furniture as security. *Id.* Because of the attorney's negligence, both the alleged sellers and the alleged buyer were forced into litigation with creditors after the business failed. *Id.* at 121. The jury found the attorney negligent, and the trial court assessed attorney's fees "as a part of the measure of damage [plaintiffs] suffered" due to the other litigation with creditors. *Id.* at 121. The Minnesota Supreme Court affirmed the award of attorney's fees. It observed that in prior cases where the "other litigation" exception had been applied, "the plaintiff, because of the tortious conduct of the defendant, was compelled to enter litigation with a third party to protect his rights." *Id.* Observing that plaintiffs were forced to litigate against third party creditors due to the attorney's malpractice, the Minnesota Supreme Court held that the exception applied.

[¶15.]     The present case does not fit within this limited exception authorizing an award of attorney's fees. The cases above involved plaintiffs being forced into "other litigation," either in a separate action to protect a property right or with third parties due to a wrongdoer's conduct. Moreover, the attorney's fees in those cases were not authorized as sanctions or costs in the existing litigation, but as damages in tort arising from other litigation. Here, the circuit court awarded attorney's fees as a sanction for conduct in the existing litigation pursuant to *Leisinger II*. However, Meendering did not file a conversion action to protect a specific property right as in *Leisinger II*, which narrowly held that attorney's fees could be awarded

as an element of damages for conversion. 2008 S.D. 19, ¶ 14, 746 N.W.2d at 743.[5] And although Meendering argues Berggren would not have sued him but for Meendering's meeting with Fischer in 2014, the motion to disqualify does not constitute *other* litigation against third parties. *See Grand*, 1996 S.D. 139, ¶ 19, 556 N.W.2d at 88 (denying fees because defendants' actions did not necessitate other litigation); *Hill*, 252 N.W.2d at 121 (awarding fees because defendant's actions forced plaintiffs into litigation with third-party creditors). Rather, Meendering's motion to disqualify was instead a component of the *same* litigation.

[¶16.] Fischer also argues that Rule 11 does not apply and cannot serve as a basis for the award of fees. Although the circuit court acknowledged that Meendering never made a formal Rule 11 motion for attorney's fees, the court stated that "it could be argued that there has been substantial compliance with the procedural aspects of the rule." But Meendering does not argue that he complied with the procedural requirements of Rule 11; rather, he argues that sanctions are permissible under the "other litigation" exception to the American Rule. Accordingly, we decline to address whether the award constituted a proper sanction under Rule 11.

---

5. We clarified that "the damages must be bifurcated between 'attorney fees incurred as a result of the conversion litigation as compared to attorney fees incurred in recovering possession of the property. The former are not compensable, the latter are.'" *Leisinger II*, 2008 S.D. 19, ¶ 14, 746 N.W.2d at 743 (quoting *Motors Ins. Corp. v. Singleton*, 677 S.W.2d 309, 315 (Ky. Ct. App. 1984)).

**Conclusion**

[¶17.]     Fischer's alleged violation of the Rules of Professional Conduct did not result in "other litigation" comprehended by either *Leisinger II* or the precedent on which it relies.  Fischer's conduct did not necessitate further litigation to protect a property right.  Further, the motion to disqualify was a component of the same, not other, litigation, and the procedural requirements for Rule 11 sanctions were not met.  Therefore, we reverse.

[¶18.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and JENSEN, Justices, concur.